STATE of Wisconsin, Plaintiff-Respondent,

v.

William A. REESE, Defendant-Appellant.†

Court of Appeals

*No. 2012AP2114-CR. Submitted on briefs December 9, 2013.
—Decided February 20, 2014.*

2014 WI App 27

(Also reported in 844 N.W.2d 396.)

† Petition for Review Filed.

266

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Andrew D. Weininger* of *Lind Weininger LLC* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Michael C. Sanders*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Blanchard, P.J., Lundsten and Sherman, JJ.

¶ 1. SHERMAN, J. William Reese appeals a judgment of conviction for operating a motor vehicle while intoxicated (OWI), as a seventh, eighth, or ninth offense. Reese contends the circuit court erred in failing to suppress evidence obtained following his arrest because the arresting officer lacked probable cause to arrest him. Reese further contends that regardless of probable cause, the results of his blood test should have been suppressed because the results were obtained without a warrant and in the absence of exigent circumstances. We conclude that probable cause existed to arrest Reese and that even though under the United States Supreme Court's recent opinion in *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552 (2013), the facts do not establish

exigent circumstances justifying a warrantless blood draw, the blood draw should not be suppressed because the arresting officer acted in good faith reliance on established Wisconsin Supreme Court precedent at the time the blood draw was conducted. Accordingly, we affirm.

## BACKGROUND

¶ 2. Reese was charged with OWI and operating a motor vehicle with a prohibited alcohol concentration, as a seventh, eighth, or ninth offense. Reese moved the court to suppress all evidence obtained as a result of his arrest on the basis that the arresting officer lacked probable cause to arrest him.

¶ 3. At the hearing on Reese's motion, Beaver Dam Police Department Sergeant Eric Feucht testified that on the evening of June 18, 2009, at approximately 8:25 p.m., he was advised by dispatch that two citizens had made a complaint of possible drunk driving concerning a gray Chevy Blazer that was observed "swerving all over the roadway." Officer Feucht testified that he was advised that the Blazer had come to a stop at the Grandview Motel in Beaver Dam and that the driver of the vehicle was still inside the vehicle. Officer Feucht testified that he arrived at the Grandview Motel "seconds" after being advised that the Blazer was in the Grandview Motel parking lot and that when he arrived, he observed a gray Chevy Blazer with the same license plate number as that provided to dispatch by the complaining witnesses. He also observed one individual standing in the motel's parking lot—a man, later identified as Reese, who was between the driver's side door of the Blazer and another vehicle, walking away from the Blazer. Officer Feucht testified that when he made contact with Reese, he observed that Reese was having

270

difficulty standing and he detected a "very strong odor" of intoxicants coming from Reese. Officer Feucht testified that Reese denied that he had been driving. Officer Feucht also testified that Reese was the only person in the vicinity of the Blazer and the witnesses who had reported the Blazer to dispatch were standing nearby with another officer.

¶ 4. Officer Feucht testified that he was advised by dispatch that Reese had four prior OWI convictions, which meant the legal limit for alcohol concentration was reduced from .08 to .02, and that after Reese declined multiple times to submit to field sobriety testing, he placed Reese under arrest. Officer Feucht testified that after placing Reese under arrest, he transported Reese to the hospital for a blood draw.

¶ 5. Following the evidentiary hearing, the court denied Reese's motion to suppress, determining that there was reasonable suspicion for the stop and probable cause for the arrest. Reese ultimately entered an *Alford*[1] plea to OWI, seventh, eighth or ninth offense, and was sentenced to four years' initial confinement and four years' extended supervision. Reese appeals.

## DISCUSSION

¶ 6. Reese contends that Officer Feucht did not have probable cause to arrest him for OWI and therefore the circuit court should have suppressed any evidence obtained following his arrest, including the results of his blood draw. Reese further argues that, regardless of whether Officer Feucht had probable cause to arrest him, the results of his blood draw should

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

271

have been suppressed because the blood draw was taken without a warrant and in the absence of exigent circumstances.

## A. *Standard of Review*

¶ 7. When this court reviews a motion to suppress, we will uphold the circuit court's findings of fact unless those findings are clearly erroneous. *See State v. Hindsley,* 2000 WI App 130, ¶ 22, 237 Wis. 2d 358, 614 N.W.2d 48. We will determine independently whether the facts found by the circuit court satisfy applicable constitutional principles. *Id.*

## B. *Probable Cause*

¶ 8. Reese argues that the evidence was insufficient to meet the standard for probable cause at the time Officer Feucht arrested him, therefore his arrest was not lawful and all evidence obtained subsequent to his arrest should have been suppressed.

¶ 9. "Probable cause to arrest is the sum of evidence within the arresting officer's knowledge at the time of the arrest which would lead a reasonable police officer to believe that the defendant probably committed or was committing a crime." *State v. Nieves,* 2007 WI App 189, ¶ 11, 304 Wis. 2d 182, 738 N.W.2d 125. "Probable cause to arrest does not require 'proof beyond a reasonable doubt or even that guilt is more likely than not.' " *State v. Babbitt,* 188 Wis. 2d 349, 357, 525 N.W.2d 102 (Ct. App. 1994) (quoted source omitted).

¶ 10. Reese's contention that Officer Feucht lacked probable cause to arrest him is based upon the argument that a reasonable officer would not have

believed that he had been the operator of the Blazer. According to Reese, "[t]he facts do not demonstrate that there was 'more than base suspicion' that [he] was operating the vehicle." Reese argues that at most, the facts demonstrate that he was slightly intoxicated while standing in a motel parking lot. Reese points out that Officer Feucht was not provided even a general description of the individual who was driving the Blazer and that Reese denied "numerous times" that he had been driving. Reese also seems to argue that Officer Feucht failed to take additional investigatory steps which might have led the officer to conclude that Reese was not the driver. According to Reese, those steps could have included verifying that the Blazer had recently been driven, attempting to locate the vehicle's keys on Reese's person, verifying that keys found inside the Blazer were keys used to operate the Blazer, and checking with the witnesses to ensure that Reese was in fact the driver of the Blazer.

¶ 11. The legal question before us is not whether Officer Feucht should have performed a more complete investigation, but rather whether the information known to him constitutes probable cause.

¶ 12. Here, police dispatch relayed a complaint to Officer Feucht that the driver of a Chevy Blazer was driving erratically and had come to a stop in the parking lot of the Grandview Motel. Dispatch relayed to Officer Feucht the license plate number of the Blazer, as relayed to dispatch by the witnesses, and Officer Feucht arrived at the motel "seconds" after being advised that the Blazer had come to a stop in the motel parking lot. Upon arriving at the parking lot, Officer Feucht observed the Blazer, which had a license plate number matching that relayed to him by dispatch.

¶ 13. When Officer Feucht arrived at the parking lot, Reese was standing near the driver's side door of the Blazer and walking away from it, which, by itself, makes him a suspect as the driver. Officer Feucht did not observe any other possible drivers in the vicinity and when Officer Feucht made contact with Reese, he observed that Reese was unsteady and smelled the odor of intoxicants coming from him. Officer Feucht was also aware that Reese had prior OWI convictions and as a result, had a lower lawful threshold for blood alcohol concentration. Looking at all of the information known to Officer Feucht, we conclude that there was probable cause for a reasonable officer in his position to believe that Reese was the driver of the Blazer and that he had been operating the vehicle while intoxicated.

## C. Blood Draw Results

¶ 14. Reese contends that even if Officer Feucht had probable cause to arrest him, the result of his blood draw was not admissible because the blood draw was taken without a warrant and without evidence of exigent circumstances.[2]

---

[2] The State argues that Reese has forfeited this argument because it is raised for the first time on appeal and for the first time in Reese's reply brief. This court need not address arguments that are raised for the first time on appeal, or, if raised below, raised for the first time in the reply brief. See State v. Van Camp, 213 Wis. 2d 131, 144, 569 N.W.2d 577 (1997) (arguments raised for first time on appeal); Richman v. Security Savings & Loan Ass'n, 57 Wis. 2d 358, 361, 204 N.W.2d 511 (1973) (arguments raised for first time in reply brief). However, because our opinion will provide guidance for other cases, we choose to exercise our discretion to address Reese's argument.

¶ 15. The Fourth Amendment to the United States Constitution provides "[t]he right . . . [of people] to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but with probable cause." U.S. CONST. AMEND. IV. Included in this right is the right to be protected from unreasonable searches of an individual's person. *See McNeely*, ___ U.S. ___, 133 S. Ct. 1552 (2013). A warrantless search of a person, including obtaining a sample of an individual's blood in a criminal investigation, is reasonable only if it falls within a recognized exception to the Fourth Amendment. *Id.* at ___, 133 S. Ct. 1552, 1558. One recognized exception, and the one at issue here, are situations in which " 'the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment.' " *Id.* (quoting *Kentucky v. King*, ___ U.S. ___, 131 S. Ct. 1849, 1856 (2011)). Whether a law enforcement officer is faced with an emergency that justifies a warrantless blood draw is determined based upon the totality of the circumstances. *Id.* at ___, 133 S. Ct. 1552, 1559.

¶ 16. In *Schmerber v. California,* 384 U.S. 757, 758–59 (1966), the Supreme Court addressed whether a warrantless blood draw of a defendant arrested for driving while under the influence of alcohol, who had been transported to the hospital for treatment following an accident, was obtained under exigent circumstances. The Court concluded that the blood draw was permissible because the officer in that case "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.' " *Id.* at 770 (quoted source omit-

ted). The Supreme Court observed that as a result of the human body's natural metabolic processes, the amount of alcohol in an individual's blood dissipates over time, which may result in the loss of evidence. *Id.* at 770–71. The Supreme Court concluded that "where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant." *Id.* at 770–71.

¶ 17. Following *Schmerber*, jurisdictions were split on "whether the natural dissipation of alcohol in [a person's] bloodstream establishes a *per se* exigency that suffices on its own to justify an exception to the warrant requirement for nonconsensual blood testing in drunk-driving investigations." *McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 1558. In Wisconsin, our supreme court adopted, based upon the Supreme Court's holding in *Schmerber*, the view that the natural dissipation of blood-alcohol evidence alone constituted a *per se* exigency. *See State v. Bohling*, 173 Wis. 2d 529, 494 N.W.2d 399 (1993), *cert. denied by Bohling v. Wisconsin*, 510 U.S. 836 (1993). Thus, following *Bohling*, the law in Wisconsin was clear that the dissipation of alcohol in a defendant's bloodstream, alone, constituted an exigent circumstance justifying a warrantless blood draw.

¶ 18. Approximately twenty years after our supreme court's decision in *Bohling*, the United States Supreme Court held in *McNeely* that the natural dissipation of alcohol in the blood *does not* constitute a *per se* exigency. *McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 1563. The *McNeely* court stated that while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in *Schmerber*, "it does not do so categorically." *Id.* Whether a warrantless blood test of a drunk driving suspect is reasonable must

be determined case by case based on the totality of the circumstances. *Id.* As a result of the *McNeely* decision, our supreme court's decision in *Bohling* that the dissipation of alcohol from the blood stream creates a *per se* exigency is no longer good law. Instead, the totality of circumstances must be analyzed to determine whether an exigency exists justifying a warrantless blood draw.

¶ 19. Reese argues that the only evidence of exigent circumstances in this case was the natural dissipation of alcohol from his blood. Relying on *McNeely*, Reese argues that this evidence, alone, is insufficient to support a finding of exigent circumstances and, therefore, the warrantless blood draw must be held inadmissible. The State agrees that the Supreme Court held in *McNeely* that dissipation of alcohol alone is insufficient to support a finding of exigent circumstances to justify a warrantless blood draw. The State does not argue that any other facts establish the existence of exigent circumstances justifying the warrantless blood draw in this case. The State argues, however, that we should nevertheless uphold the validity of the blood draw by applying the "good faith exception" articulated in *State v. Dearborn*, 2010 WI 84, 327 Wis. 2d 252, 786 N.W.2d 97, under which the remedy of exclusion for a constitutional violation was not applied where officers' unconstitutional conduct was undertaken with the "objectively reasonable reliance upon clear and settled Wisconsin precedent that is later deemed unconstitutional by the United States Supreme Court." *Id.*, ¶ 4.

¶ 20. In *Dearborn*, the defendant sought to suppress evidence obtained during a search of his vehicle that took place after his arrest. *Id.*, ¶ 1. It was undisputed in *Dearborn* that under the United States Supreme Court's opinion in *Arizona v. Gant*, 556 U.S. 332 (2009), the search of the defendant's vehicle was uncon-

stitutional. *Dearborn*, 327 Wis. 2d 252, ¶ 2. The State argued, however, that the evidence should not be suppressed (the exclusionary rule not applied) because at the time the search took place, which was prior to the *Gant* decision, the law was clear that the type of search conducted of the defendant's vehicle was lawful. *See id.*, ¶ 30. The supreme court agreed, holding that "the good faith exception preclude[d] application of the exclusionary rule where officers conduct a search in objectively reasonable reliance upon clear and settled Wisconsin precedent that is later deemed unconstitutional by the United States Supreme Court." *Id.*, ¶ 4.

¶ 21. The *Dearborn* court faced two competing principles: (1) the retroactivity rule; and (2) the good faith exception to the exclusionary rule. *Id.*, ¶¶ 30–31, 33. Under the retroactivity rule, newly declared constitutional rules are applied to all similar cases pending on direct review. *Id.*, ¶ 31. Had this rule applied in *Dearborn*, the court would have been required to hold that the search of the defendant's vehicle was unconstitutional, even though the search was "conducted . . . in accordance with the law as declared at the time of the search," and, under the exclusionary rule, the remedy for the constitutional violation would have been required to hold that the evidence should be excluded. *Id.*, ¶¶ 32–33. The court in *Dearborn* explained, however, that under the good faith exception, the exclusionary rule is not applied "when the officers conducting an illegal search 'acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment,' " *id.*, ¶ 33 (quoting *United States v. Leon*, 468 U.S. 897, 918 (1984)), and if the exclusion would not deter future unlawful police conduct. *Id.*, ¶ 36. In applying the good faith exception, the court concluded

278

that the officers were following the "clear and settled precedent," which "is exactly what officers *should* do" and that applying the exclusionary rule in that case "would have absolutely no deterrent effect on officer misconduct." *Id.*, ¶ 44.

¶ 22. As was the case in *Dearborn*, the police officer here was following the "clear and settled precedent" when he obtained a blood draw of Reese without a warrant. The deterrent effect on officer misconduct, which our supreme court characterized as "the most important factor" in determining whether to apply the good faith exception, would, as in *Dearborn*, be nonexistent in this case because the officer did not and could not have known at the time that he was violating the Fourth Amendment. *See id.*, ¶ 49. At the time of the blood draw the officer was following clear, well-settled precedent established by the Wisconsin Supreme Court, which the court has stated "is exactly what officers *should* do." *Id.*, ¶ 44. Accordingly, because the officer reasonably relied on clear and settled Wisconsin Supreme Court precedent in obtaining the warrantless blood draw and because exclusion in this case would have no deterrent effect, we conclude that the blood draw evidence should not be suppressed.

## CONCLUSION

¶ 23. For the reasons discussed above, we affirm. *By the Court.*—Judgment affirmed.