# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### April 1, 2014 Session

## STATE OF TENNESSEE v. KEVIN CORTEZ CHRYSTAK

**Appeal from the Circuit Court for Madison County**
**No. 12-550    Nathan B. Pride, Judge**

**No. W2013-01219-CCA-R3-CD  -  Filed August 13, 2014**

The Defendant, Kevin Cortez Chrystak, appeals from the Madison County Circuit Court's order affirming his conviction for violation of the implied consent statute. See Tenn. Code Ann. § 55-10-406. In the trial court, the Defendant raised a statutory interpretation argument concerning the mandatory blood draw provision of the implied consent law. On appeal, the Defendant argues that the mandatory provision is unconstitutional, violating his Fourth Amendment Rights, and that he did not violate the implied consent law when he presented for the mandatory blood draw. The Defendant has waived his constitutional argument on appeal. However, pursuant to principles of statutory construction, we agree with the Defendant that he did not violate the implied consent law when his blood was obtained via the mandatory provisions. Following our review, we reverse the order of the trial court upholding the implied consent violation and dismiss the charge.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Reversed and Charge Dismissed

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

David W. Camp, Jackson, Tennessee, for the appellant, Kevin Cortez Chrystak.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; James G. Woodall, District Attorney General; and Matthew Floyd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

On April 30, 2012, the Defendant was arrested and charged with driving under the influence of an intoxicant (DUI) and violating the implied the consent law. The Defendant was convicted of the implied consent violation in Madison County General Sessions Court and, thereafter, appealed his conviction to the circuit court and retained counsel.[1] At the subsequent hearing, Officer Buddy Crowell, Officer Matthew Fullerton, and the Defendant testified.

According to Officer Crowell, in the early morning hours of April 30, 2012, he pulled the Defendant over for driving without taillights. Officer Crowell noticed an odor of alcohol, and in response to questioning, the Defendant informed Officer Crowell that he had consumed a "few" drinks. Thereafter, Officer Crowell had the Defendant exit the vehicle and perform several field sobriety tests. Officer Matthew Fullerton also arrived on the scene to assist Officer Crowell with the stop. In Officer Crowell's opinion, the Defendant performed poorly on the tests and was under the influence of an intoxicant. During the process of assessing the Defendant's performance, Officer Crowell learned from dispatch that the Defendant had two prior convictions for DUI.

After placing the Defendant in custody in the back of his patrol car, Officer Crowell read Tennessee's Implied Consent Form to the Defendant. The Defendant was first advised that, because he had two prior DUI convictions, a blood draw was mandatory. The Defendant was then asked if he would consent to the blood draw, and he replied in the negative and refused to sign the consent form. According to Officer Crowell, he was following "standard procedure on DUI's" in his series of advice and questions to the Defendant regarding the implied consent law.

Officer Fullerton provided a similar recount of events as that of Officer Crowell at the hearing. Officer Fullerton testified that he heard Officer Crowell read the implied consent form to the Defendant "at least twice."

The Defendant's version differed in that, according to the Defendant, after he first refused the blood draw, he then gave his consent to Officer Crowell while they were still present at the DUI scene. The Defendant explained, "I said no at first. Then he read me the . . . rules or whatever. I told him we got to do what we got to do. I said, well I'll do it." Also according to the Defendant, Officer Crowell never presented him with the consent form to sign. The Defendant stated that he did not understand why he was being asked for his

---

[1] From the statements of the district attorney general at the hearing on the implied consent violation, it appears that the DUI charge was still pending at that time. We were not provided with any information on the disposition of the DUI charge, whether the Defendant was found guilty or not guilty, pled guilty, or the charge was dismissed.

consent when he was informed that the test was mandatory regardless of his consent. He did not believe he had a choice in the matter. The Defendant did not resist the subsequent blood draw at the hospital.

Following the witnesses's testimony, the parties argued about the statutory interpretation of the implied consent law and its mandatory provision. At the time the Defendant was charged with an implied consent violation, April 30, 2012,[2] Tennessee Code Annotated section 55-10-406 provided as follows:

> (a)(1) Any person who drives a motor vehicle in this state is deemed to have given consent to a test or tests for the purpose of determining the alcoholic content of that person's blood, a test or tests for the purpose of determining the drug content of the person's blood, or both tests. However, no such test or tests may be administered pursuant to this section, unless conducted at the direction of a law enforcement officer having reasonable grounds to believe the person was driving while under the influence of alcohol, a drug, any other intoxicant or any combination of alcohol, drugs, or other intoxicants as prohibited by § 55-10-401, or was violating the provisions of § 39-13-106, § 39-13-213(a)(2) or § 39-13-218.
> . . . .
> (3) Any law enforcement officer who requests that the driver of a motor vehicle submit to either or both tests authorized pursuant to this section, for the purpose of determining the alcohol or drug content, or both, of the driver's blood, shall, prior to conducting either test or tests, advise the driver that refusal to submit to the test or tests will result in the suspension by the court of the driver's operator's license . . . .
> (4)(A) If such person, having been placed under arrest and then having been requested by a law enforcement officer to submit to either or both tests, and having been advised of the consequences for refusing to do so, refuses to submit, the test or tests to which the person refused shall not be given, and the person shall be charged with violating this subsection (a). . . .
> . . . .
> (f)(2) If a law enforcement officer has probable cause to believe that the driver of a motor vehicle has committed a violation of § 39-13-213(a)(2), § 39-13-218 or § 55-10-401 and has been previously convicted of § 39-13-213(a)(2), § 39-13-218 or § 55-10-401 the officer shall cause the driver to be tested for the purpose of determining the alcohol or drug content of the

---

[2] An offense "shall be prosecuted under the act or statute in effect at the time of the commission of the offense." See Tenn. Code Ann. § 39-11-112.

-3-

driver's blood. The test shall be performed in accordance with the procedure set forth in this section and shall be performed regardless of whether the driver does or does not consent to the test.

. . . .

(4) The results of a test performed in accordance with subdivision (f)(1), (f)(2) and (f)(3) may be offered as evidence by either the state or the driver of the vehicle in any court or administrative hearing relating to the accident or offense subject to the Tennessee Rules of Evidence.

After the Defendant's arrest, the legislature amended section 55-10-406 by deleting the first sentence of subdivision (a)(4)(A) and substituting instead the following:

Except as required by subsection (f), court order or search warrant, if such person, is placed under arrest, requested by a law enforcement officer to submit to either or both tests, advised of the consequences for refusing to do so, and refuses to submit, the test or tests to which the person refused shall not be given, and the person shall be charged with violating this subsection (a).

See Act of May 9, 2012, ch. 892, 2012 Tenn. Pub. Acts.

The State argued that there was clear and convincing evidence that the Defendant violated the implied consent law. Defense counsel responded by noting the first sentence of section (a)(4)(A), "Except as required by subsection (f)," and continued that this statutory language created an exception in subsection (f) to the implied consent law. However, as we previously noted, this language was not added until after the Defendant committed the instant crime.

Defense counsel then stated specifically that "this was not a constitutional argument" but one of statutory interpretation. Defense counsel continued, "Why would you need to sign the form if they're going to take it anyway. Therefore, why would you then be charged with violation of Implied Consent in those instances when F applies. . . . It simply makes no sense to interpret the statute that way." He reiterated that this was "not a constitutional question" but "a pure legal argument."

The court then noted the language in subsection (f), "The test shall be performed in accordance with the procedure set forth in this section and shall be performed regardless of whether the driver does or does not consent to the test[,]" and asked defense counsel for his interpretation of this language. Defense counsel replied that this language was repeating the first sentence of (a)(4)(A), stating that this was an exception to the consent requirement. Defense counsel continued that the Defendant's consent became irrelevant and that he should

not have been asked for such consent under these circumstances. Defense counsel once again stated that this was "purely a matter of statutory interpretation."

The State replied that the language pointed to by the court in subsection (f) "close[d] off" the Defendant's argument because it indicated the legislature's desire for the accused to still be asked to consent to the blood draw before mandatorily drawing that blood. The State then noted the public policy behind the implied consent law and that, under the Defendant's reading, more egregious offenders to whom the mandatory provisions applied would not be subject to the additional penalties of the implied consent law but first-time offenders would be. The State also noted that information provided to the officer about prior convictions leading to the mandatory blood draw could later be determined to be incorrect. Finally, the State submitted that the "except" language of (a)(4)(A) meant that except in certain circumstances, including the mandatory provision, blood shall not be drawn absent consent.

In its oral findings at the hearing, the trial judge found Officer Crowell's testimony that the Defendant in fact refused to give his consent to be more credible than the Defendant's statements to the contrary. By order filed April 22, 2013, the trial court found that "the plain reading" of the implied consent law, Tennessee Code Annotated section 55-10-406, "indicates that officers should first request that the person consent to the test but, if the person refuses, the officers can then draw the blood mandatorily." The court then determined that the Defendant failed to comply with provisions of the implied consent law by refusing his consent and upheld his conviction. This timely appealed followed.

ANALYSIS

On appeal, the Defendant challenges the trial court's refusal to vacate his conviction for violating the implied consent law, arguing that the mandatory provision of the implied consent law is unconstitutional. Specifically, the Defendant, citing to <u>Missouri v. McNeely</u>, -- U.S. --, 133 S.Ct. 1552 (2013), argues that the mandatory provision of section 55-10-406 is unconstitutional in violation of his Fourth Amendment Rights "as much as it requires mandatory blood draws without law enforcement obtaining a search warrant." He continues that the consent form used in this case "is likewise unconstitutional in that it requires mandatory blood draws" and that he "was provided misleading and erroneous information as to his rights regarding implied consent." As an alternative argument, the Defendant contends that the implied consent law does not apply to him because his prior convictions mandated that his blood be drawn. The State responds that the Defendant abandoned his challenge to the constitutionality of the implied consent law's mandatory provision at the trial court level. The State continues that the provision is constitutional and that the mandatory provision does not exclude those drivers from violating the implied consent law.

Because the Defendant's constitutional claim is raised for the first time on appeal, the issue is waived. See Tenn. R. App. P. 36(a); State v. Johnson, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived."). In his reply brief, the Defendant asserts that his constitutional issue is not waived because McNeely was not decided until after the hearing. This does not change the fact that the constitutional issue was not raised in the trial court. Thus, any application of McNeely to this case would necessarily be retroactive via plain error review. See Tenn. R. App. P. 36(b) (stating that "[w]hen necessary to do substantial justice, [this] court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal").

In order for this court to find plain error, we consider the following five factors:

(a) the record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused did not waive the issue for tactical reasons; and
(e) consideration of the error is "necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). Plain error cannot be found unless the record establishes all of the elements of the Adkisson standard. Id. at 283.

In McNeely, the Supreme Court, in a fractured opinion, held that the natural dissipation of alcohol in the blood does not, standing alone, constitute an exigency sufficient to justify a warrantless blood draw. 133 S. Ct. at 1563 (Sotomayor, J., majority). See also Aviles v. State, 385 S.W.3d 110, 112 (Tex. App. 2012) (Texas Appeals Court holding that a warrantless blood draw, which was conducted pursuant to a provision of Texas Transportation Code mandating such test when a suspect had two, prior DWI convictions, did not violate the Fourth Amendment), vacated, 134 S. Ct. 902 (2014) (United States Supreme Court vacating for reconsideration in light of McNeely). However, McNeely was not decided until April 17, 2013, almost a year after the Defendant's arrest. We conclude that no clear and unequivocal rule of law was breached at the time the Defendant's blood was taken. See Offie John Dostson v. Deputy Brian Welch, et al., No. 3-13-0166, 2013 WL 5863736, at *3 n.1 (M.D. Tenn. Oct. 30, 2013) ("However, the blood draw in this case occurred on February 22, 2012, so McNeely is not relevant in determining whether or not a constitutional right was clearly established at the time of this incident."); see also State v. Reese, 844 N.W.2d 396, 402-03 (Wis. Ct. App. 2014) (applying a good faith exception to McNeely). Moreover, the remedy for such constitutional violation would be exclusion of the blood test, not dismissal of the implied consent violation. See, e.g., Clayton Dean Reeder v.

State, -- S.W.3d --, No. 06-13-00126-CR, 2014 WL 1862669, at *4 (Tex. App. Apr. 29, 2014) (holding that motion to suppress blood sample should have been granted and reversing and remanding for a new trial). Thus, a substantial right of the accused has not been adversely affected, and consideration of the error is not necessary to do substantial justice. In this regard, we conclude that plain error does not exist.

Additionally, the Defendant makes an alternative argument, arguing "that he has complied with the [i]mplied [c]onsent [l]aw in that he submitted to the mandatory blood draw." The State replies that a clear reading of the statute reveals that the implied consent law applies to all drivers regardless of whether a blood or breath test is performed under the mandatory provisions. Again, we refer to the provisions in effect at the time of the offense.

"The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995) (citing State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993)). Where the statute's language is clear and unambiguous, we derive the legislative intent from its plain and ordinary meaning. State v. Collins, 166 S.W.3d 721, 726 (Tenn. 2005) (citing State v. Wilson, 132 S.W.3d 340, 341 (Tenn. 2004)). If, however, "the parties derive different interpretations from the statutory language, an ambiguity exists, and we must look to the entire statutory scheme in seeking to ascertain legislative intent." Owens, 908 S.W.2d at 926 (citing Lyons v. Rasar, 872 S.W.2d 895, 897 (Tenn. 1994)). In ascertaining the intent of the legislature, courts "'may look to the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment.'" Collins, 166 S.W.3d at 726 (quoting State v. Gilliland, 22 S.W.3d 266, 275 (Tenn. 2000)). "Statutes 'in pari materia'—those relating to the same subject or having a common purpose—are to be construed together." Owens, 908 S.W.2d at 926 (citing Lyons, 872 S.W.2d at 897). Furthermore, the rules of statutory construction direct courts not to "apply a particular interpretation to a statute if that interpretation would yield an absurd result." State v. Sims, 45 S.W.3d 1, 11 (Tenn. 2001).

"'For the privilege of operating a vehicle on our highways, the driver consents to a test to determine whether that privilege is, as a law enforcement officer suspects, being abused.'" Collins, 166 S.W.3d at 727 (citing State v. Turner, 913 S.W.2d 158, 160 (Tenn. 1995)). Tennessee's implied consent law provides: "Any person who drives a motor vehicle in this state is deemed to have given consent to a test or tests for the purpose of determining the alcoholic content of that person's blood, a test or tests for the purpose of determining the drug content of the person's blood, or both tests." Tenn. Code Ann. § 55-10-406(a)(1). Additionally, "[t]he statute delineating the implied consent law is not a criminal statute, but

a statute which confers an administrative penalty." State v. Pinchak, 277 S.W.3d 912, 915 (Tenn. Crim. App. 2005) (internal quotation omitted).

As our supreme court has instructed, we construe section 55-10-406 together with all of the driving under the influence statutes. Collins, 166 S.W.3d at 726 (citing Turner, 913 S.W.2d at 160). The purpose of these statutes is "to remove from the highway, prosecute, and punish those who engage in the dangerous menace of driving under the influence." Id. (citing Turner, 913 S.W.2d at 160) (additional citations omitted). DUI statutes are "'intended to enable the drunken driver to be apprehended before he strikes.'" State v. Lawrence, 849 S.W.2d 761, 765 (Tenn. 1993) (quoting Hughes v. State, 535 P.2d 1023, 1024 (Okla. Crim. App. 1975)). "Thus, the purpose of the implied consent statute . . . is to advance the State's objective of keeping intoxicated drivers off the roadways." Collins, 166 S.W.3d at 727.

Our court has stated that, "[o]nce a defendant consents to testing and allows his or her blood to be drawn, the purpose of the implied consent statute has been satisfied, even if the defendant later revokes consent for chemical analysis." State v. Michael Shayne Cochran, No. M2006-02175-CCA-R3-CD, 2007 WL 2907281, at *3 (Tenn. Crim. App. June 19, 2007). The same is true when, as in this case, the test is compelled: the purpose of the statue was satisfied, i.e, the Defendant's blood was drawn for a determination of his intoxication level. Additionally, a similar penalty, suspension of the Defendant's driver's license, would have occurred in this case if the Defendant was ultimately convicted of the DUI charge. See Tenn. Code Ann. § 55-10-404 (governing suspension of a convicted DUI defendant's driver's license). Therefore, we agree with the Defendant that he did not violate the implied consent law.

## CONCLUSION

Based upon the foregoing, the order of the trial court is reversed, and the Defendant's violation of the implied consent law is dismissed.

_____
D. KELLY THOMAS, JR., JUDGE