COURT OF APPEALS
DECISION
DATED AND FILED

October 16, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP887**

**STATE OF WISCONSIN**

Cir. Ct. No. **2016CV166**

**IN COURT OF APPEALS
DISTRICT III**

RONALD MAGNIN AND JAYSON MAGNIN,

    PLAINTIFFS-APPELLANTS,

  V.

MAGNIN WHOLE CORPORATION, TERRY MAGNIN, DAVID MAGNIN,
JAMES MAGNIN, JR., JERRY MAGNIN, ESTATE OF MICHAEL MAGNIN,
CORBIN MAGNIN, JAMES MAGNIN AND CHAD MAGNIN,

    DEFENDANTS-RESPONDENTS.

        APPEAL from a judgment of the circuit court for Oconto County: MICHAEL T. JUDGE, Judge. *Affirmed*.

        Before Stark, P.J., Hruz and Seidl, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Ronald and Jayson Magnin appeal a judgment, entered following a bench trial, dismissing their claims against the Magnin Whole Corporation (the Corporation), seven of the Corporation's individual members, and the Estate of Michael Magnin.[1]  The claims at issue arose out of the Corporation's assertion that it had expelled Ronald from its membership.  Ronald refused to acknowledge his expulsion, and he and his son, Jayson, ultimately filed a lawsuit asserting claims for quiet title to the Corporation's real property, breach of fiduciary duty, judicial dissolution of the Corporation, and partition of the Corporation's real property.

¶2    Ronald and Jayson now argue the circuit court erred by determining that: (1) the Corporation lawfully expelled Ronald from its membership; and (2) Jayson voluntarily withdrew his membership from the Corporation.  We affirm.

## BACKGROUND

¶3    The Corporation is a Wisconsin nonstock, not-for-profit corporation organized under WIS. STAT. ch. 181 (2017-18).[2]  It was formed in 1984 for the purpose of purchasing real estate located in Oconto County—which it did—to be used as a recreational hunting property.  Membership in the Corporation is restricted to male members of the Magnin family.

---

[1] Because the individual parties share a surname, we refer to them by their first names for clarity.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶4    In May 2016, the Corporation was comprised of ten members: Ronald, Jayson, the seven individually named defendants, and Michael.[3]    That month, eight members voted to expel Ronald from the Corporation.  Neither Ronald nor Jayson received notice that such a vote was being undertaken, and therefore they did not cast a vote.

¶5    Following the vote, the Corporation mailed Ronald a correspondence informing him it had "decided that it is no longer in the best interest of the [C]orporation to continue your membership."  It also issued him a check in the amount of $2000, which the Corporation stated was "the past practice upon the release of a member."

¶6    Ronald refused to acknowledge his expulsion and, accordingly, he hired an attorney.  His counsel sent a reply correspondence to the Corporation stating, in relevant part, that "[s]imilar to any other corporation, the Corporation has no right to strip the rights of any of its members."

¶7    In response to Ronald's refusal to acknowledge his expulsion, the Corporation decided to sell its real property to Terry for the sum of $100, and liquidate the Corporation.  However, that sale was rescinded prior to any transfer of property taking place, and the real property was never conveyed to Terry or any other party.

---

[3]  Michael subsequently passed away, and his interest in the Corporation was redeemed in accordance with the Corporation's bylaws.

3

¶8     On September 30, 2016, Ronald and Jayson filed the lawsuit underlying this appeal.  They asserted claims of quiet title, breach of fiduciary duty, judicial dissolution, and partition of real property.

¶9     Following commencement of the lawsuit, the Corporation's board of directors decided that for the "safety of the members," Ronald and Jayson would not be permitted on the Corporation's property during the 2016 gun deer hunting season.  Ronald and Jayson responded by moving the circuit court for a temporary restraining order and a preliminary injunction that would permit them to use a portion of the Corporation's land during the gun deer hunting season.  The court took no action on that motion, and the parties ultimately stipulated that no one would use the property that hunting season.

¶10     Prior to trial, the parties submitted a stipulation of facts to the circuit court.  Included in the stipulation were the following pertinent paragraphs:

> 1. The Plaintiffs in the above-captioned matter are Ronald Magnin and Jayson Magnin.  The Defendants are Magnin Whole Corporation (the "Corporation"), Terry Magnin, David Magnin, James Magnin, Jr., Jerry Magnin, the Estate of Michael Magnin, Corbin Magnin, James Magnin, and Chad Magnin.
>
> 2. Each of the parties listed in the preceding paragraph *is a member of the Corporation*, with the exception of the Estate of Michael Magnin ….

(Emphasis added.)

¶11     After a one-day bench trial, the circuit court issued a decision dismissing all of Ronald and Jayson's claims.  The court dismissed the quiet title and partition claims on the grounds that neither Ronald nor Jayson ever held a title ownership interest in the Corporation's property.  As to the breach of fiduciary duty and judicial dissolution claims, the court determined they failed because the

4

Corporation had lawfully excluded Ronald, pursuant to WIS. STAT. § 181.0620(2). Ronald and Jayson filed a motion for reconsideration, which the court denied. They now appeal.

## DISCUSSION

¶12 On appeal, Ronald and Jayson assert that the circuit court made two erroneous findings concerning their breach of fiduciary duty and judicial dissolution claims that require reversal.[4] Specifically, they argue the court "erred in finding" that: (1) Ronald was lawfully expelled from membership in the Corporation; and (2) Jayson voluntarily withdrew from the Corporation.

¶13 Following a bench trial, we will not set aside a circuit court's factual findings unless they are clearly erroneous. WIS. STAT. § 805.17(2). A finding of fact is clearly erroneous when it is against the great weight and clear preponderance of the evidence. *Phelps v. Physicians Ins. Co.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615. We search the record for evidence that supports the court's findings, rather than looking for evidence to support findings the court could have, but did not, make. *Dickman v. Vollmer*, 2007 WI App 141, ¶14, 303 Wis. 2d 241, 736 N.W.2d 202. In addition, because it is the circuit court's responsibility to resolve conflicts in testimony, we will uphold its determinations as to witness credibility unless they are inherently or patently incredible, and we will not second-guess the court's reasonable factual inferences. *Id.* Finally, the application of a statute to factual findings is a question of law that we review

---

[4] Ronald and Jayson do not raise any challenges regarding the dismissal of their claims to quiet title or partition of real property on appeal, and they have therefore abandoned those claims. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

de novo. ***Ott v. Peppertree Resort Villas, Inc.***, 2006 WI App 77, ¶11, 292 Wis. 2d 173, 716 N.W.2d 127.

¶14    Ronald and Jayson advance numerous arguments as to why the circuit court's above-described "findings" were clearly erroneous. Before addressing those arguments, however, we first clarify the factual and legal issues actually before us. Although Ronald and Jayson present their arguments as challenging the court's factual findings, in reality they are challenging the court's legal conclusions.

¶15    To explain, as the circuit court's memorandum decision made clear, the court first determined that the Corporation's bylaws did not contain an expulsion provision and that WIS. STAT. § 181.0620 therefore governed the termination of an individual's membership. That latter conclusion was a legal one. The court then made the factual finding that "[i]n May, 2016, more than two-thirds of the members of the Corporation voted to expel Ronald Magnin."[5] Applying § 181.0620(2) to that finding, the court concluded, as a matter of law, that Ronald had been validly expelled from the Corporation in May 2016 by a vote of two-thirds of the Corporation's members.

¶16    Likewise, the circuit court also made an explicit factual finding that Jayson voluntarily withdrew from the Corporation. Although the court did not cite the statute providing that voluntary withdrawal is a valid means of terminating a membership, it is implicit in the court's decision that it was relying on WIS. STAT.

---

[5] We note that, on appeal, Ronald and Jayson do not argue that the circuit court's finding that eight of the Corporation's ten members voted to expel Ronald from the Corporation in May 2016 was clearly erroneous.

§ 181.0620(1) to reach this conclusion.[6] Having distinguished between the court's factual findings—i.e., that eight of the Corporation's ten members voted to expel Ronald in May 2016, and that Jayson voluntarily withdrew from the Corporation shortly thereafter—and the court's legal conclusions—i.e., that both Ronald and Jayson's memberships in the Corporation were lawfully terminated under § 181.0620, we now turn to Ronald and Jayson's arguments on appeal.

¶17    We begin with Ronald and Jayson's assertion that the circuit court erred by applying WIS. STAT. § 181.0620 to the facts of this case.[7] Their argument rests on the premise that the Corporation's bylaws "describe precisely how members could be accepted and discharged." Therefore, because the plain language of § 181.0620(1) states that it governs the termination of a membership only if termination is not "otherwise provide[d]" for in a corporation's articles of incorporation, they contend the statute has no applicability to this case.

---

[6] The relevant portions of WIS. STAT. § 181.0620 read:

> **(1)** TERMINATION OF MEMBERSHIP. Unless otherwise provided in the articles of incorporation, membership shall be terminated by death, voluntary withdrawal or expulsion, and thereafter all of the rights of the member in the corporation or in its property shall cease.

> **(2)** EXPULSION AND SUSPENSION. Members may be suspended or expelled in the manner provided in the articles of incorporation, or in the bylaws, if the articles so provide. If no provision is made in the articles of incorporation, a member may be expelled, or suspended for a specific period of time, by an affirmative vote of two-thirds of the members entitled to vote, or of two-thirds of the directors if there are no members entitled to vote.

[7] Although Ronald and Jayson raised this argument in the circuit court, they did not raise it on appeal until they filed their reply brief. We could deem the argument forfeited on this basis. *See* **State v. Reese**, 2014 WI App 27, ¶14 n.2, 353 Wis. 2d 266, 844 N.W.2d 396. Nonetheless, , we choose to address their argument that the court erred by applying that statute.

¶18   The problem with Ronald and Jayson's argument is that the bylaw provision they point to does not speak to the termination of a membership, it speaks only to the transfer or sale of a membership. It provides:

> In the event of a member wishing to sell his Share, the Price is always the original Purchase Price Per Share, the same goes for members Death or Divorce. That share can only Be purchased from a (Magnin) who wishes to Buy Into the Corp. or from the Corp. itself.

Consequently, we conclude the circuit court did not err by applying WIS. STAT. § 181.0620, rather than the above bylaw provision, to its factual findings.

¶19   Ronald and Jayson next argue that the circuit court erred by making "conflicting findings of fact, two of which are contrary to the Stipulated Facts." First, Ronald and Jayson observe that the court initially found Ronald "understood that he had been expelled from the Corporation" but then later found that Ronald "refused to acknowledge his expulsion from the Corporation."

¶20   As the Corporation notes, however, Ronald and Jayson fail to explain what is conflicting about these two findings. We perceive no conflict in a person understanding that an action has occurred and, at the same time, that person refusing to acknowledge its legitimacy. In any event, because Ronald and Jayson fail to reply to the Corporation's argument that these two findings are not in conflict, we deem them to have conceded the Corporation's argument. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578.

¶21   Ronald and Jayson next argue that the circuit court's determination that Ronald was "actually expelled" from the Corporation conflicts with the parties' stipulation of facts, which provided "[e]ach of the parties … is a member

of the Corporation." Based on that language, they argue that the court was bound by the parties "stipulating to the fact that Ronald [and Jayson were] member[s] of the Corporation for the purposes of trial."

¶22 The problem with this argument is that it assumes Ronald's membership status with the Corporation presents a factual question. To the contrary, Ronald and Jayson's membership status presents a legal question—indeed, determining their membership status was the entire point of this litigation—and courts are not bound by parties' legal concessions. *See Fletcher v. Eagle River Mem'l Hosp., Inc.*, 156 Wis. 2d 165, 178-80, 456 N.W.2d 788 (1990).

¶23 This conclusion follows because, as discussed above, in order to determine whether Ronald and Jayson were members of the Corporation, the circuit court had to consider the evidence presented at trial and then, based on that evidence, determine whether Ronald and Jayson's membership in the Corporation had been terminated as a matter of law. And, as discussed, to make this determination the court had to apply WIS. STAT. § 181.0620(2) to its factual findings. Because the application of a statute to facts is a question of law, the membership status of Ronald and Jayson was, and is, a legal question. *See Ott*, 292 Wis. 2d 173, ¶11. Therefore, the parties' stipulation did not bind the circuit court, nor does it bind this court.

¶24 Ronald and Jayson next argue the circuit court's "finding that Ronald Magnin was actually expelled from the Corporation is clearly erroneous as it contradicts [Terry's] own testimony." In so arguing, they rely on the following testimony from Terry:

Q Would it be a fair statement, [Terry], that there was never any recognition that Ronald Magnin had been kicked out of the company or the Corporation and that claim first arose in the process of preparing a response to the summary judgment motion?

A I don't know because he wasn't—he wasn't kicked out.

¶25     This argument ignores testimony that directly contradicted the above-quoted testimony, including testimony from Terry himself. For example, Terry also testified:

Q And in the same response brief, that was the first time it was alleged that somehow Ronald Magnin was actually kicked out in response to your May 27, 2016, letter. Are you aware of that?

A No.

Q Did you believe he was kicked out the moment you sent the first letter in May?

A Yes.

Again, it is the role of the circuit court to resolve conflicts in testimony. ***Dickman***, 303 Wis. 2d 241, ¶14. As Ronald and Jayson do not develop any argument explaining how the court erred in doing so, and instead merely point to the conflicting testimony, we need not address this argument further.[8] *See **State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992).

---

[8] We note that in advancing this argument, Ronald and Jayson are again attacking the circuit court's ultimate conclusion that Ronald was expelled from the Corporation by virtue of the May 2016 vote. What they fail to come to grips with is that the court's finding that eight of ten members voted to expel Ronald is the factual finding that is relevant to this conclusion. Again, Ronald and Jayson do not dispute that eight members of the Corporation did, in fact, vote to expel Ronald in May 2016. Accordingly, Terry's—or any other members'—subjective belief about the legal effect of the vote is irrelevant to the court's legal conclusion.

¶26     Ronald and Jayson also argue that a number of the Corporation's actions following its May 2016 vote to expel Ronald "demonstrate that Ronald Magnin was never expelled from the Corporation." For instance, they point to the fact that the Corporation mailed Ronald a $10 check in September 2016,[9] and then later attempted to preclude Ronald from hunting on the Corporation's land during the 2016 deer season. However, they fail to provide citation to any legal authority, or to develop any reasoned argument, that the actions a corporation takes subsequent to a valid vote to terminate a membership can rescind or revoke that termination. We therefore decline to address this argument further. *See id.*

¶27     Finally, Ronald and Jayson argue that the circuit court's finding that Jayson voluntarily withdrew from the Corporation "is not supported by the record and is clearly erroneous." We disagree, as Jayson's own testimony provided a sufficient basis for the court to conclude that he voluntarily withdrew from the Corporation. Specifically, Jayson testified:

> Q So while you understood your father's leaving the Corporation was involuntary, yours was entirely voluntary?
>
> [Counsel for Ronald and Jayson]: I object. He's never indicated he was voluntarily leaving the [Corporation].
>
> [Jayson]: Correct.
>
> THE COURT: The Court understands what happened here.

Because the court ultimately found that Jayson voluntarily withdrew from the Corporation, the court clearly inferred that Jayson answered "Correct" to the question of whether his leaving the Corporation was entirely voluntary. We

---

[9] In a correspondence sent with this check, the Corporation wrote that the $10 represented Ronald's "share of the proceeds of the sale of the real estate [to Terry] owned by the Corporation."

conclude this inference was reasonable and therefore we uphold it, as we must.[10] *See Dickman*, 303 Wis. 2d 241, ¶14.

> *By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[10] We also observe that Ronald and Jayson failed to reply to the Corporation's argument—which it made in its response brief—that this testimony provided a sufficient factual basis upon which the circuit court could infer that Jayson voluntarily withdrew from the Corporation. Nor did Ronald or Jayson address this portion of Jayson's testimony in their brief-in-chief. They have therefore effectively conceded the Corporation's argument on this point. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

In addition, we note that the Corporation raises an argument in its response brief that Ronald and Jayson failed to establish a factual basis for their breach of fiduciary duty and judicial dissolution claims. Therefore, the Corporation argues that we should affirm the circuit court's judgment even if we conclude the court erred in determining that Ronald and Jayson's memberships were lawfully terminated. However, given our conclusion that the court did not err in making those determinations, we need not address the Corporation's argument. *See Miesen v. DOT*, 226 Wis. 2d 298, 309, 594 N.W.2d 821 (Ct. App. 1999) (we decide cases on the narrowest grounds possible).