COURT OF APPEALS
DECISION
DATED AND FILED

June 8, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP607**

Cir. Ct. No. **2019TP66**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO W.R. III,
A PERSON UNDER THE AGE OF 18:

DANE COUNTY DEPARTMENT OF HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

S. M.,

RESPONDENT-APPELLANT.

APPEAL from order of the circuit court for Dane County: NIA TRAMMELL, Judge. *Affirmed.*

¶1    NASHOLD, J.[1]  S.M. appeals an order terminating her parental rights to her son, W.R. III ("W.R.").  She argues that the circuit court erroneously exercised its discretion in determining that termination is in W.R.'s best interests because the court did not receive direct evidence from the proposed adoptive parents.  I reject this argument and affirm the circuit court order.

## BACKGROUND

¶2    In 2016, when W.R. was approximately five years old, he was adjudged to be in need of protection or services ("CHIPS") and received placement outside of his parental home.  W.R. has remained in foster care since that time, and at the time of the dispositional hearing in this matter, had resided with the same foster parents for approximately six years.

¶3    In 2019, the Dane County Department of Human Services ("Department") petitioned for termination of both parents' rights, alleging "continuing need of protection or services" and "failure to assume parental responsibility."  *See* WIS. STAT. § 48.415(2), (6).  W.R.'s biological father supported termination of his parental rights and adoption by W.R.'s foster parents.  Because this appeal involves only W.R.'s mother, I discuss W.R.'s biological father only to the extent necessary to address the issues S.M. raises on appeal.

¶4    As to the grounds for terminating S.M.'s parental rights under WIS. STAT. § 48.415(2), (6), the petition alleged, *inter alia*, that:  W.R. has continued in placement outside his parental home since 2016; the Department made reasonable

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

efforts to provide services to S.M.; S.M. failed to meet the conditions for return of W.R. to his parental home; S.M. did not have regular and successful interactions with W.R. and police sometimes needed to be called during their visits; S.M. did not cooperate with service providers; S.M. had been incarcerated multiple times since W.R.'s placement outside the home, causing S.M. to miss in-person visits with W.R.; S.M. only communicated with W.R.'s therapist once and did not reach out to his school or medical providers; S.M. had only sporadic communication with W.R. by phone or letter, due to her own refusal and because of threatening behaviors over the phone toward W.R.'s foster parents.

¶5     During the grounds phase of the proceeding,[2] the circuit court found S.M. in default based upon her nonappearance at a scheduled hearing on January 27, 2022. Accordingly, the court made a formal finding of unfitness at a subsequent hearing. S.M. does not challenge either the default or unfitness finding. Instead, this case concerns the dispositional phase of the proceeding.

¶6     S.M., pro se, initially appeared at the dispositional hearing but left the courtroom prior to the evidentiary part of that hearing.[3] The circuit court

---

[2] There are two phases in a termination of parental rights proceeding: a "grounds" or "unfitness" phase and a "dispositional" phase. *Steven V. v. Kelley H.*, 2004 WI 47, ¶¶24-27, 271 Wis. 2d 1, 678 N.W.2d 856. At the grounds phase, the circuit court determines whether the parent is unfit based on one of grounds listed in WIS. STAT. § 48.415. *Steven V.*, 271 Wis. 2d 1, ¶¶24-25. If the parent is found unfit, the case proceeds to the dispositional phase, during which the court determines if termination is in the best interests of the child. *Id.*, ¶27.

[3] Prior to leaving the courtroom, S.M. stated:

> You know what, I got too much going on right now, too much good. I'm getting ready to become a social worker in Human Services. I'm almost done with school. I'm interning at the Port St Vinny's. I can't go into my future like this. These people got open cases on me. I'm not going back to jail for nobody. You all can have [W.R.]. [W.R.] is 11 years old. He'll come back to me. I'm done. You all can have him. You all can

(continued)

proceeded with the hearing and took evidence, including testimony from the Department social worker handling W.R.'s case. At the close of the evidence, and after arguments from the Department and the guardian ad litem ("GAL") in support of termination, the court made findings with respect to W.R.'s best interests, addressing the six factors in WIS. STAT. § 48.426(3). Based on the evidence presented, the court terminated S.M.'s parental rights. S.M. appeals.

## DISCUSSION

¶7       As stated, S.M. challenges only the dispositional phase of this proceeding. During the dispositional phase of a termination proceeding, the prevailing factor to be considered by the circuit court is the best interests of the child. *See Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶22, 255 Wis. 2d 170, 648 N.W.2d 402; WIS. STAT. § 48.424(3) ("The court shall decide what disposition is in the best interest of the child."). "A determination of the best interests of the child in a termination proceeding depends on first-hand observation and experience with the persons involved and therefore is committed to the sound discretion of the circuit court." *Davis S. v. Laura S.*, 179 Wis. 2d 114, 150, 507 N.W.2d 94 (1993). "A circuit court's determination will not be upset unless the decision represents an erroneous exercise of discretion." *Id.* "The [circuit] court's findings of fact will not be set aside unless clearly

---

have him.… [Y]ou all want me to sign something before I leave? I can sign something. I'm done. I'm done.

S.M. was pro se at the dispositional hearing because her counsel had withdrawn from representing her. During the course of the termination proceedings, four successive attorneys were appointed to represent S.M. but each withdrew. S.M. is again represented by counsel on appeal.

erroneous." ***Gerald O. v. Cindy R.***, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996); *see also* WIS. STAT. § 805.17(2).

¶8      In considering the child's best interests, the circuit court must consider (but is not limited to) the following six factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).   Here, S.M. concedes that the court considered these factors.  That concession is appropriate, given the court's extensive examination of these factors, which I now discuss.

¶9      As to the first factor, the likelihood of W.R.'s adoption after termination, the circuit court found that there were "no barriers to adoption" and that the "likelihood of [W.R.] being adopted is very high through his current foster placement."  The court noted the social worker's testimony that the foster parents "are willing to adopt the child and that it has been vetted and supported by the State."

¶10 Regarding the second factor, W.R.'s age and health at the time of disposition and at the time he was removed from the home, the circuit court found that W.R. "has been progressing normally with regard to his development and that he is in good health at the time of the disposition." Although the court did not specifically mention W.R.'s age, the evidence showed that W.R. was five years old when he was removed from S.M., was eleven years old at the time of the dispositional hearing, and had been residing with the same foster family for six years.

¶11 With respect to the third factor, whether W.R. has substantial relationships with his parents or other family members and whether it would be harmful to him to sever those relationships, the circuit court found the following. Although W.R. has a relationship with both mother and father, "it is not a substantial relationship." W.R. "has a better relationship with his father" and enjoys visits with his father, which the foster parents have helped facilitate. Nevertheless, the father "indicated that he is supportive of [W.R.] being adopted, and has vocalized that." As to S.M., however, the court found that "there is a tense relationship" between S.M. and W.R. that sometimes results in "a very stressful environment" for W.R.; that W.R. "has indicated that things are less stressful when he does not see his mother"; that not seeing S.M. has a positive effect at his foster placement and at school; and that the reverse is true when he engages with S.M. The court found that it would "not be harmful" to W.R. to sever the relationships between him and S.M. and "it would likely be more harmful for [W.R.] to have a relationship with [S.M.], based on the interactions that they've had." With regard to other family members, W.R. has had phone calls with extended family, but "there is no indication that there is a substantial relationship at all with any of his extended family."

¶12    Regarding the fourth factor, W.R.'s wishes, the circuit court found that approximately two and one-half to three years ago, W.R. "indicated through a therapist that he wished to be adopted by his current foster parents" and that this "has continued and remains his position, and that he wants to remain in the home of the foster parents."

¶13    As to the fifth factor, the duration of W.R.'s separation from the parent, the circuit court found that it "has been six consecutive years since the child has been living outside of the home," which is "substantial."

¶14    The circuit court also examined the sixth and final factor, whether W.R. would be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of his current placement, the likelihood of future placements, and the results of prior placements. As to the past and future placements, the court found that there were two prior placements under the current CHIPS case[4] before his current placement, and that W.R. is an unlikely candidate for future placements.

¶15    As to his current placement, the circuit court again noted that there are foster parents "who do want to adopt" W.R.; that the foster parents have two other boys residing in their household with whom W.R. has "a natural and positive relationship"; that W.R. was being raised in a farm environment and is "excited about raising chickens on the farm"; and that W.R. is engaged in extracurricular activities. The court further found that W.R. has his own room and "has conversations with the foster parents about progressing and getting older and

---

[4] As S.M. acknowledges, W.R. had a prior CHIPS case when he was four years old, during which he was in placement for approximately four months.

being able to develop a level of independence." The court found that the current placement seems to be a "good fit" where W.R. "tends to thrive" and that "the foster parents have been able to work with [W.R.] and counsel him through the stresses of being in foster care and the tension that he has with his mother." The court found that there is "tension with the mother and when he is interacting with the mother it has a tendency to d[y]sregulate him, as testified [to] by the social worker," and that it is "in the best interest of [W.R.] to sever that relationship."

¶16 As stated, S.M. concedes that in determining W.R.'s best interests, the circuit court considered the required factors in WIS. STAT. § 48.426(3). S.M.'s sole argument on appeal is that the court erroneously exercised its discretion in concluding that termination is in W.R.'s best interests because "there was no evidence received from the proposed adoptive resources for W.R.," namely, W.R.'s foster parents. S.M. acknowledges that testimony was received through the social worker regarding the foster parents' desire and ability to adopt W.R., but argues that this evidence is insufficient to support the court's discretionary finding as to W.R.'s best interests.

¶17 Significantly, S.M. cites no authority to support the argument that a circuit court may not terminate parental rights in the absence of direct testimony or other evidence from the prospective adoptive parents. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered."). In fact, S.M.'s assertion is negated by WIS. STAT. § 48.426(3), which not only does not require such evidence, but sets forth six factors that a court must consider in determining the child's best interests, none of which must be accorded more weight than another, and only two of which are relevant to the likelihood of adoption: para. (a), "[t]he likelihood of the child's adoption," and para. (f), "[w]hether the child will be able

to enter into a more stable and permanent family relationship as a result of the termination." *See* § 48.426(3)(a), (f).

¶18 S.M. argues that the circuit court cannot "meaningfully" consider the factors in WIS. STAT. § 48.426(3)(a) and (f) without testimony or other evidence directly from the proposed adoptive parents. S.M. fails to offer any developed argument as to why the social worker's testimony cannot serve to support the court's findings with respect to these factors. As to para. (a), the social worker testified, and the court found, that the likelihood of W.R.'s adoption was "very high" and that W.R.'s foster parents had been approved to adopt. Regarding para. (f), the social worker testified that, as a result of termination, W.R. would be able to enter into a more permanent and stable family relationship; would have legal permanence; would no longer have the "d[y]sregulating" interactions with S.M. or have to deal with social workers and social service specialists; and would instead "just have normalcy and calm in his life." Thus, the court had ample evidence to support its findings regarding these two factors.

¶19 In addition, during the GAL's oral recommendation in favor of termination, the GAL noted that W.R.'s foster parents are "committed to" W.R., "ready, willing, and able," and "approved for the adoption." The GAL further stated, "I don't think that there is any question that he will be adopted." S.M. has not established that the circuit court erroneously exercised its discretion in making its findings on these factors without testimony or other evidence directly from the prospective adoptive parents.

¶20 S.M. further asserts that, without testimony or other evidence directly from the prospective adoptive parents themselves, the circuit court did not have information regarding what S.M.'s "daily life would look like in terms of

housing, education, medical care, nutrition, transportation and financial support," nor did it have information regarding the prospective adoptive parents' ages, health, or source of income. Again, S.M. offers no authority even suggesting that such information is required in a termination proceeding, likely because no such authority exists.[5]

¶21 In sum, I conclude that S.M.'s sole challenge to the circuit court's termination order is without merit. I therefore affirm the court's order.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] In her reply brief, S.M. raises several new arguments challenging the social worker's testimony related to the foster parents adopting W.R.—namely, assertions based on hearsay, the right to confront witnesses, and due process. I do not consider these arguments because they were not raised in S.M.'s brief-in-chief and, given S.M.'s decision to leave the hearing, were likewise not raised in the circuit court. *See State v. Reese*, 2014 WI App 27, ¶14 n.2, 353 Wis. 2d 266, 844 N.W.2d 396 ("This court need not address arguments that are raised for the first time on appeal, or … raised for the first time in the reply brief."). These arguments may also be rejected on the basis that they are undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App 1992) (this court need not address undeveloped arguments).