PD-0410-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/13/2015 6:10:58 PM
Accepted 5/15/2015 11:22:21 AM
ABEL ACOSTA
CLERK

**IN THE COURT
OF CRIMINAL APPEALS OF TEXAS**

| | | |
|---|---|---|
| **ROBERT OTHELLA LEWIS** | § | |
| **a/k/a ROBERT LEWIS,** | § | |
| *APPELLANT* | § | |
| **V.** | § | NO.    PD-0410-15 |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| **APPELLEE** | § | |

§ § §

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

§ § §

FILED IN
COURT OF CRIMINAL APPEALS

May 15, 2015

ABEL ACOSTA, CLERK

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

DANIELLE A. KENNEDY, Assistant
Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas  76196-0201
(817) 884-1687 FAX (817) 884-1672
State Bar No. 02760900
CCAappellatealerts@tarrantcountytx.gov

LISA C. MCMINN
State Prosecuting Attorney

**ORAL ARGUMENT IS REQUESTED**

## IDENTITY OF THE JUDGE, PARTIES, AND COUNSEL

The Hon. Sharen Wilson, Tarrant County Criminal District Attorney, represents the State of Texas in this appeal. Additionally, representing the State on appeal is the Hon. Danielle A. Kennedy, Assistant Criminal District Attorney and Hon. Debra Windsor, Post-Conviction Chief. At trial, the Hon. Samuel Williams and Hon. Graham Norris represented the prosecution. The State's attorneys' address is Office of the Criminal District Attorney of Tarrant County, Tim Curry Criminal Justice Center, 401 W. Belknap, Fort Worth, Texas 76196-0201.

The Hon. Lisa C. McMinn is the State's Prosecuting Attorney. Mail for the Office of the State Prosecuting Attorney, located in the Price Daniel Sr. Building, may be sent to P.O. Box 13046, Austin, Texas, 78711. Appellant, Defendant below, is Robert Othella James Lewis. Hon. Abe Factor and Hon. Kimberly Knapp represented Appellant at the trial court and Hon. Abe Factor continues now to represent Appellant on appeal. Mr. Factor offices at 5719 Airport Freeway, Fort Worth, Texas 76117.

The State tried Appellant's case in the Criminal District Court No. 1 of Tarrant County, Texas, also located in the Tim Curry Criminal Justice Center. The Hon. Jerry Woodlock presided over the case.

ii

# SUBJECT INDEX

IDENTITY OF THE JUDGE, PARTIES, AND COUNSEL ................................... ii

SUBJECT INDEX ....................................................................................... iii

INDEX OF AUTHORITIES ........................................................................ v

STATEMENT REGARDING ORAL ARGUMENT ................................................ 1

STATEMENT OF THE CASE ....................................................................... 2

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE .................... 2

STATEMENT OF FACTS ............................................................................ 3

QUESTIONS PRESENTED FOR REVIEW ....................................................... 5

FIRST QUESTION FOR REVIEW
> Does a warrantless, nonconsensual blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment? RR. II Supp. 107-08.

SECOND QUESTION FOR REVIEW
> Do exclusionary rule principles mandate suppression of blood evidence seized via a warrantless, nonconsensual, valid-at-the-time mandatory blood draw? TEX. CODE CRIM. PROC. art. 38.23(b). RR. II Supp. 107-08.

THIRD QUESTION FOR REVIEW
> Did the Fort Worth Court correctly apply the proper standard of review in a case where the error is of constitutional dimension? *See* TEX. R. APP. P. 44.2(a). *Lewis*, 2015 WL 1119966 at *3. RR. III 38-97.

ARGUMENT AND AUTHORITIES ................................................................ 6

    FIRST QUESTION FOR REVIEW .............................................................. 8

Codification of Fourth Amendment principles ...............................................8

Texas' special needs framework adds to the
reasonableness calculation................................................................10

Erroneous consideration of the "Less Intrusive Means" test.....................11

Implied-consent draws are reasonable........................................................13

SECOND QUESTION FOR REVIEW ..........................................................14

THIRD QUESTION FOR REVIEW.............................................................17

CONCLUSION AND PRAYER .............................................................20

CERTIFICATE OF COMPLIANCE......................................................21

CERTIFICATE OF SERVICE .............................................................22

COURT OF CRIMINAL APPEALS' OPINION.................................APPENDIX A

# INDEX OF AUTHORITIES

## Cases

*Beeman v. State*,
86 S.W.3d 613 (Tex. Crim. App. 2002) ..............................................................15n

*Breithaupt v. Abram*,
352 U.S. 432 (1957).....................................................................................14

*Burks v. State,*
454 S.W.3d 705 (Tex. App. – Fort Worth, pet. filed) ................................................4

*Clay v. State*,
240 S.W.3d 895 (Tex. Crim. App. 2007) ..............................................................20

*Cole v. State*,
454 S.W.3d 89 (Tex. App.—Texarkana 2014, pet. granted)....................................7

*Davis v. United States*,
___ U.S. ___, 131 S. Ct. 2419 (2011).....................................................................15

*Douds v. State*,
434 S.W.3d 842
(Tex. App.—Houston [14th Dist.] June 5, 2014, pet. granted) ................................6

*Heien v. North Carolina*,
135 S. Ct. 530 (2014)......................................................................................16

*Holidy v. State*,
No. 06-13-00261-CR, 2014 WL 1722171
(Tex. App.—Texarkana Apr. 30, 2014, pet. granted)
(mem. op., not designated for publication)............................................................7

*Hulit v. State*,
982 S.W.2d 431 (Tex. Crim. App. 1998) .............................................................13

*Illinois v. Krull,*
480 U.S. 342 (1987).............................................................................. 15, 16n

*Jones v. State*,
119 S.W.3d 766 (Tex. Crim. App. 2003) ................................................................18

*Karev v. State*,
281 S.W.3d 428 (Tex. Crim. App 2009) ...............................................................15n

*Lewis v. State*,
No. 02-13-00416-CR, ___ S.W.3d ___, 2015 WL 1119966
(Tex. App.—Fort Worth March 12, 2015, pet. pending) ............................... *passim*

*Mapp v. Ohio*,
367 U.S. 643 (1961)................................................................................................16n

*Maryland v. King*,
569 U.S. ___, 133 S. Ct. 1958 (2013).....................................................................13

*McGee v. State*,
105 S.W.3d 609 (Tex. Crim. App. 2003) ................................................................13

*McGruder v. State*,
No. 10-13-00109-CR, ___ S.W.3d ___, 2014 WL 3973089.....................................7

*McQuarters v. State,*
58 S.W.3d 250 (Tex. App. – Fort Worth 2001, pet. ref'd)......................................19

*Michigan Dept. of State Police v. Sitz*,
496 U.S. 444 (1990).................................................................................................13

*Michigan v. DeFillippo*,
443 U.S. 31 (1979)...................................................................................................16

*Miles v. State*,
241 S.W.3d 28 (Tex. Crim. App. 2007) ....................................................................9

*Missouri v. McNeely*,
569 U.S. ___, 133 S. Ct. 1552 (2013)....................................................... *passim*

*Motilla v. State*,
78 S.W.3d 352 (Tex. Crim. App. 2002) ..................................................................19

*Reeder v. State*,
428 S.W.3d 930 (Tex. App.—Texarkana 2014, pet. granted)....................................7

*Segundo v. State*,
270 S.W.3d 79 (Tex. Crim. App. 2008),
*cert. denied*, 558 U.S. 828 (2009)......................................................................13

*Skinner v. Railway Labor Executives' Ass'n*,
489 U.S. 602 (1989)........................................................................ 10, 11, 12

*Smith v. State*,
No. 13-11-00694-CR, ___ S.W.3d ___, 2014 WL 5901759
(Tex. App.—Corpus Christi 2014, pet. granted) ........................................7

*Snowden v. State*,
353 S.W.3d 815 (Tex. Crim. App. 2011) ........................................ 17, 18

*State v. Reese*,
353 Wis.2d 266, 844 N.W.2d 396 (Wis. App. 2014) ............................................16n

*State v. Villarreal*,
PD-0306-14, ___ S.W.3d ___,
2014 WL 6734178 (Tex. Crim. App. 2014) .................................................... *passim*

*Tharp v. State*,
935 S.W.2d 157 (Tex. Crim. App. 1996) ............................................................11

*Thornton v. State*,
145 S.W.3d 228 (Tex. Crim. App. 2004) ............................................................16n

*United States v. Peltier*,
422 U.S. 531 (1975)...........................................................................................16n

*United States v. Polanco*,
93 F.3d 555 (9th Cir. 1996) ...............................................................................18

*Vernonia School Dist. 47J v. Acton*,
515 U.S. 646 (1995)..........................................................................................12

*Weems v. State*,
434 S.W.3d 655 (Tex. App.—San Antonio 2014, pet. granted) ..............................6

*Welsh v. Wisconsin*,
466 U.S. 740 (1984) ....................................................................................9

## Statutes, Rules, Constitutions

TEX. CODE CRIM. PROC. art. 14.04 ......................................................................10

TEX. CODE CRIM. PROC. art. 18.16 ........................................................................9

TEX. CODE CRIM. PROC. art. 38.23 ............................................................... 6, 14, 15

TEX. PENAL CODE § 1.07 ...................................................................................15

TEX. PENAL CODE § 49.045 ..................................................................................8

TEX. TRANS. CODE § 524.012 ............................................................................ 10

TEX. TRANS. CODE § 724.012 ........................................................................ *passim*

TEX. R. APP. P. 9.4 ..........................................................................................18

TEX. R. APP. P. 44.2(a) ...................................................................................6, 17

TEX. R. APP. P. 66.3 ..........................................................................................8

U.S. CONST. amend. IV ................................................................................ *passim*

# IN THE COURT
# OF CRIMINAL APPEALS OF TEXAS

ROBERT OTHELLA LEWIS    §
a/k/a ROBERT LEWIS,     §
    *APPELLANT*    §
V.    §    NO.    PD-0410-15
        §
THE STATE OF TEXAS,    §
    **APPELLEE**    §


## <u>STATE'S PETITION FOR DISCRETIONARY REVIEW</u>

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through her Tarrant County Criminal District Attorney, and respectfully urges this Court to grant discretionary review of this cause in accordance with the rules of appellate procedure.


## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Argument should be granted based on the importance of this issue to the jurisprudence of the State. There are literally hundreds of cases winding their way through the Texas criminal justice system in the wake of the Supreme Court's decision in *Missouri v. McNeely*, 569 U.S. ___, 133 S.Ct. 1552 (2013). More are waiting in appellate limbo for this Court's opinion on rehearing in *State v. Villarreal*, ___ S.W.3d ___, 2014 WL 6734178 (Tex. Crim. App. 2014) (resubmitted on reh'g March 18, 2015). Very few cases, however, have

1

addressed the issue raised in this petition: Has the Fort Worth Court of Appeals properly applied the correct standard of review for harmless error in this case?

## STATEMENT OF THE CASE

Appellant sought suppression of his blood draw results based on the Supreme Court's decision in *McNeely*, 133 S.Ct. 1552. (Tr. I 13-15). The trial judge rejected the defense argument attacking the validity of blood seized pursuant to the Texas implied-consent statute. (RR. II Supp. 107-08). She specifically found that *McNeely* did not render the Texas implied consent laws unconstitutional, and that the officer was permitted to rely on the statutes in existence at the time of the arrest. *Id.* Subsequently, a jury convicted Appellant of felony driving while intoxicated. RR. IV 59. He was then sentenced by that jury to five years' incarceration. RR. IV 134.

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

The Fort Worth Court of Appeals reversed the trial court in a ***published*** opinion authored by Justice Lee Gabriel. *Lewis v. State*, No. 02-13-00416-CR, ___ S.W.3d ___, 2015 WL 1119966 (Tex. App.—Fort Worth March 12, 2015, pet.

pending)[1]. Rehearing was not sought. The State files this petition, due on May 13, 2015, following one extension.

## STATEMENT OF FACTS

In July of 2012, Appellant was stopped by a Bedford police officer for erratic driving. RR. III 38-40. Appellant refused to give his name or produce an ID, and the officer saw that Appellant had red, watery eyes, slurred speech, and smelled of alcohol. RR. III 52-55. Appellant refused to exit his vehicle upon request. RR. III 57. The officer pointed his Tazer at Appellant, but did not "taze" him at this time, as Appellant finally got out of his vehicle. RR. III 60. When asked to perform field sobriety tests, Appellant flat refused, saying he "didn't have to." RR. III 60. When told he was under arrest, Appellant had to be asked five times to turn around and put his hands behind his back before the officers warned him that further refusal would result in him being tasered. RR. III 64. He continued to refuse, and was tasered as a result. RR. III 64-65. Appellant fell and hit his head on the ground when tasered. RR. III 65-66. Out of concern for his health, the officer called for an ambulance. RR. III 66-67. EMS arrived and removed the Tazer probes from Appellant. RR. III 76.

---

[1] Attached hereto as Exhibit A.

3

The police called for a tow truck to impound Appellant's vehicle, and, after Appellant refused ambulance transport, the officers learned that Appellant had two prior DWI convictions. The police then drove him to HEB hospital for the mandatory blood draw. RR. III 78-80. Upon arrival, Appellant refused to get out of the police car. RR. III 80. Appellant told the officers that he had a right not to go to the hospital. RR. III 81-82. Appellant made himself (at 6'4" and about 240 pounds) dead weight, and it took two officers to push and pull him out of the police car. RR. III 82-84. Once inside the emergency room, Appellant began cursing. As a result, the officers asked if they could be quickly moved to the room where the blood would be taken. RR. III 86. Appellant refused to sign any paperwork at the hospital. RR. III 87. When Appellant was being read his rights, he began cursing very loudly. RR. III 90-91. He threatened the hospital staff that he would kick them in the face if they attempted to draw his blood. It took two officers and several hospital staff to hold him down. RR. III 92. He would not even let the nurse check the scrape on his head. RR. III 97. The blood sample later showed that he had 0.027 parts alcohol in his blood – more than triple the legal limit. RR. III 199.

On appeal, the Fort Worth Court rejected the trial court's ruling. *Lewis*, 2015 WL 1119966 at *2-3. The court relied on this Court's original decision in *Villarreal, Villarreal* 2014 WL 6734178, and on its own opinion in *Burks v. State,*

4

454 S.W.3d 705, 707-08 (Tex. App. – Fort Worth, pet. filed) that the Texas exclusionary rule did not apply to a warrantless seizure. *Lewis,* 2015 WL 1119966 at *3.

In discussing the State's harm argument, the Court focused on the testimony of the forensic toxicologists and the fact that the State argued his blood alcohol content in addition to arguing that he had lost the normal use of his faculties. *Lewis*, 2015 WL 1119966 at *3. Specifically, the Court held:

> Although there was other evidence of Lewis's intoxication – bloodshot eyes, slurred speech, and his refusal to perform field sobriety tests – we cannot conclude beyond a reasonable doubt that the blood alcohol evidence did not contribute to the jury's verdict. The evidence that Lewis's blood-alcohol content was three times the legal limit had a probable impact on the verdict even in light of other evidence indicating intoxication, and there is a reasonable possibility that the error might have contributed to Lewis's conviction or punishment.

*Id*.

## QUESTIONS FOR REVIEW

## FIRST QUESTION FOR REVIEW

Does a warrantless, nonconsensual blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment? RR. II Supp. 107-08.

5

## SECOND QUESTION FOR REVIEW

Do exclusionary rule principles mandate suppression of blood evidence seized via a warrantless, nonconsensual, valid-at-the-time mandatory blood draw? See TEX. CODE CRIM. PROC. art. 38.23(b). RR. II Supp. 107-08.

## THIRD QUESTION FOR REVIEW

Did the Fort Worth Court correctly apply the proper standard of review in a case where the error is of constitutional dimension? *See* TEX. R. APP. P. 44.2(a). *Lewis*, 2015 WL 1119966 at *3.  RR. III 38-97.


## ARGUMENTS AND AUTHORITIES

The law at the time of trial was – and still is – in flux regarding Texas' mandatory blood draw provisions.  Texas courts of appeals have grappled with the import of *Missouri v. McNeely*, 133 S.Ct. 98 (2013).  Indeed, this Court is in the midst of deciding some of the issues presented herein.  Whilst a November 2014 decision addressed the merits of the Fourth Amendment, the case is in flux since this Court recently granted rehearing. *Villarreal*, 2014 WL 6734178.  Additionally, this Court has under submission six other *McNeely*-related cases, with yet another case granted and waiting for submission.  *Douds v. State,* 434 S.W.3d 842 (Tex. App.—Houston [14th Dist.] June 5, 2014, pet. granted) (submitted on arguments Mar. 13, 2015, PD-0857-14); *Weems v. State,* 434 S.W.3d 655 (Tex. App.—San Antonio  2014, pet. granted) (submitted on arguments Nov. 19, 2014, PD-0635-

14); *Reeder v. State*, 428 S.W.3d 930 (Tex. App.—Texarkana 2014, pet. granted) (submitted on arguments Jan. 14, 2015, PD-0601-14); *Smith v. State,* No. 13-11-00694-CR, ___ S.W.3d ___, 2014 WL 5901759 (Tex. App.—Corpus Christi 2014, pet. granted) (submitted Apr. 29, 2015, PD-1615-CR); *McGruder v. State*, No. 10-13-00109-CR, ___ S.W.3d ___, 2014 WL 3973089 (Tex. App.—Waco 2014, pet. granted) (submitted Apr. 15, 2015, PD-1263-14); *Holidy v. State,* No. 06-13-00261-CR, 2014 WL 1722171 (Tex. App.—Texarkana Apr. 30, 2014, pet. granted) (mem. op., not designated for publication) (submitted on arguments Jan. 14, 2015, PD-0622-14); *see also Cole v. State*, 454 S.W.3d 89 (Tex. App.—Texarkana 2014, pet. granted) (briefing in progress).

In sum, the import of *McNeely* on Texas's mandatory-blood-draw and implied-consent statutes was unsettled at the time of Appellant's trial and remains unsettled today. Perhaps with this uncertainty in mind, the trial court had the presence of mind to charge the jury that they could find Appellant guilty of DWI if they found **either** that his blood alcohol content was above 0.08 or that he lost the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body. Tr. I 98. The jury returned a general verdict of guilty. RR. IV 59.

Review should be granted in this case as well because this case involves important questions of law that have not been finally addressed by this Court. In

7

addition, this case presents questions that need resolution from this Court in light of the conflicts in the interim appellate courts. TEX. R. APP. P. 66.3(a)(b)(c)(d)(f).

## FIRST QUESTION FOR REVIEW

*Does a warrantless, nonconsensual blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment?* RR. II Supp. 107-08.

There is nothing new in this first question for review: the State merely reiterates the position of prosecutors from other counties across Texas whose cases are already under consideration by this Court on a *McNeely*-related issue. Hence, the State respectfully asks this Court to dispose of the instant case in a manner consistent with the petitions in *Villarreal*, *Douds*, *Weems*, *Reeder*, *Smith*, *McGruder*, *Holidy*, and *Cole*. Here, the officer reasonably relied on an existing, narrowly-focused, reasonable statute to obtain a compelled blood draw. The seizure occurred when the officer—at the time of the offense—possessed probable cause that Appellant's impaired and intoxicated conduct constituted felony DWI. TEX. PENAL CODE § 49.045; TEX. TRANSP. CODE § 724.012(b)(2).

### Codification of Fourth Amendment principles

The State contends that this Court's original opinion in *Villarreal* failed to consider that the implied-consent statute codified Fourth Amendment principles.

8

For instance, this Court has previously recognized a statutory codification of the exigency exception. *See Miles v. State*, 241 S.W.3d 28, 39–40 n.54 (Tex. Crim. App. 2007) (*citing* TEX. CODE CRIM. PROC. art. 18.16). *McNeely* recognized that every case involving the dissipation of alcohol included some exigency. *McNeely*, 133 S. Ct. at 1561, 1568. This ever-present exigency must be considered when assessing the reasonableness of statutory draws.

Combine the static alcohol-evaporation-exigency consideration with the Legislature's clear codification of the gravity-of-the-offense exigency. The implied-consent statute extinguished a defendant's right to refuse where an officer possesses probable cause to believe that certain enumerated, egregious circumstances exist. TEX. TRANSP. CODE § 724.012(b). Defendants only lose their refusal right under carefully circumscribed scenarios involving felonious intoxication-related offenses and/or resultant injuries necessitating hospitalization. *Id.* The statute only applies to the most serious categories of DWI offenders. This statutory limitation amounts to a codification of an additional recognized exigency unrelated to blood-alcohol dissipation. *Welsh v. Wisconsin* held that the Fourth Amendment authorizes common-sense consideration of the underlying offense's gravity when weighing the existence of an exigency. *Welsh v. Wisconsin*, 466 U.S. 740, 751–52 (1984) (exigency calculations include consideration of a crime's severity). Consideration of a crime's gravity is the essence of reasonableness

because the State's interest is greater in a more serious case. *Cf.* TEX. CODE CRIM. PROC. art. 14.04 (authorizing warrantless arrests for felonies where an officer did not observe the offense).

Texas' implied-consent legislation codified Fourth Amendment probable cause requirements. U.S. CONST. amend. IV. Elements of the implied consent statute act to codify this well-known quantum-of-evidence as a requirement for a compelled search. TEX. TRANSP. CODE § 724.012(b). The probable cause requirement and the factual exigencies of felonious conduct and the dissipation of alcohol together create a neutral, non-arbitrary framework authorizing a seizure from an already-in-custody arrestee. These refinements in the implied-consent statutes structure embrace the essence of Fourth Amendment "reasonableness."

**Texas' special needs framework adds to the reasonableness calculation**

The now-withdrawn *Villarreal* decision rejected application of the Supreme Court's special needs doctrine to the mandatory blood draw framework. *Villarreal*, 2014 WL 6734178 at \*14–15; *see Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). However, this Court did not consider that blood drawn pursuant to Chapter 724's mandate also implicates administrative license revocation [ALR] procedures, a separate regulatory process that focuses on protecting the traveling public by removing offenders from the road. *See* TEX.

10

TRANSP. CODE § 524.012(b)(1) (mandating license suspension based upon BAC). "The primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but to protect the public from the carnage on the public roads of Texas caused by drunk drivers." *Tharp v. State*, 935 S.W.2d 157, 159 (Tex. Crim. App. 1996). Such regulation focuses on the government's strong interest in removing intoxicated drivers from the road, just as railroad regulation in *Skinner* sought to increase railway safety by detecting intoxicated employees. *Compare Skinner*, 489 U.S. at 620–21 with *Tharp*, 935 S.W.2d at 159.

Special needs principles recognize the statute's provision of a neutral, detached vehicle for protecting citizens from impaired drivers and defendants from unfettered discretion. The special-needs exception constitutes another factor to consider in analyzing Texas' compelled-draw framework.

**Erroneous consideration of the "Less Intrusive Means" test**

The original *Villarreal* decision considered the ready availability of warrants when rejecting the validity of Texas' mandatory draw statute. *Villarreal*, 2014 WL 6734178, at *18 (finding no compelling need to uphold warrantless, nonconsensual blood searches where warrants are "often readily available"). However, factors such as electronic warrants and the availability of a magistrate shift the focus away from an officer's conduct and, instead, weigh considerations of alternative means.

11

*But see McNeely*, 133 S. Ct. at 1560–64 (Part IIB's alternative means analysis applied when determining whether *per se* exigency existed).  The Supreme Court resoundingly rejected applying less-intrusive-alternative-practices arguments to Fourth Amendment cases not resolved under the exigency exception.  *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 663–64 n.3 (1995) (upholding warrantless, random urine screening of athletes after considering diminished privacy, unobtrusiveness, and severity of need, spurning arguments relying on less intrusive alternatives); *Skinner*, 489 U.S. at 629 n.9 (upholding random, suspicionless drug screening of railway employees under special needs exception and discarding less-drastic-and-equally-effective-means arguments).  One footnote in *Skinner* flatly debunks the propriety of considering less-drastic alternatives in scenarios that include warrantless and even suspicionless seizures for toxicological testing, similar to Appellant's facts.  *Id.*

The State maintains that the "less-restrictive-alternatives" paradigm only logically applies when a seizure's validity rests solely on the temporal factors presenting an exigency.  However, less-drastic, *post-hoc* what-ifs do not apply to reasonableness calculations factoring in other warrantless exceptions.  Hence, the State contends *Villarreal's* analysis mistakenly applied this construct.

12

**Implied-consent draws are reasonable**

Reasonableness has always been the linchpin of the Fourth Amendment, venerated in the provision's plain language. U.S. CONST. AMEND. IV; *Hulit v. State*, 982 S.W.2d 431, 435–36, 438 (Tex. Crim. App. 1998). Discernment of what is "reasonable" requires courts to consider the balance between an individual's privacy and legitimate governmental interests, especially when public safety is of utmost concern. *See Maryland v. King*, 569 U.S. ___, 133 S. Ct. 1958, 1979 (2013); *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 455 (1990); *Segundo v. State*, 270 S.W.3d 79 (Tex. Crim. App. 2008), *cert. denied*, 558 U.S. 828 (2009). *Villarreal* viewed the choice between applying a Fourth Amendment exception and consideration of a reasonableness balancing approach as mutually exclusive analytical constructs. The State respectfully believes that this black-white consideration of these two concepts is mistaken, especially in light of the fact that this Court has relied upon the balancing approach to assay reasonableness on similar issues. *See Segundo*, 270 S.W.3d at 96–99; *McGee v. State*, 105 S.W.3d 609 (Tex. Crim. App. 2003); *Hulit*, 982 S.W.2d at 434 n.1, 436.

Years ago, the Supreme Court recognized that a framework requiring a driver's consent was anything but nonsensical. The *Breithaupt* court pointed to recently adopted implied-consent provisions and wrote:

> It might be a fair assumption that a driver on the highways in obedience to a policy of the State, would consent to have a blood test

13

made as part of a sensible and civilized system protecting himself as well as other citizens not only from the hazards of the road due to drunken driving, but also from some use of dubious lay testimony.

*Breithaupt v. Abram*, 352 U.S. 432, 435 n.2 (1957). The State contends that compelled draws under implied-consent provisions are inherently reasonable when weighing the needs of all involved. Indeed, Fourth Amendment reasonableness underpins the statute. The well-known exceptions—as argued in the myriad cases already before this Court—considered individually and in concert with each other, alongside a balancing of the competing interests, all support the continued viability of Texas' implied-consent framework.

## SECOND QUESTION FOR REVIEW

*Do exclusionary rule principles mandate suppression of blood evidence seized via a warrantless, nonconsensual, valid-at-the-time mandatory blood draw?* *See* TEX. CODE CRIM. PROC. art. 38.23(b). RR. III 38-97.

Simply put: the rules requiring the exclusion of evidence should not apply to mandatory blood-draw scenarios that occurred under the auspices of TEX. TRANSP. CODE § 724.012(b)(2) and which were performed prior to the Supreme Court's April 2013 pronouncement.

Federally, the good-faith exception to the Fourth Amendment's exclusionary rule applies when law enforcement, at the time of the search, acted objectively

14

reasonably by relying on (1) a statute, later declared unconstitutional, or (2) binding judicial precedent, subsequently overruled. *Illinois v. Krull*, 480 U.S. 342, 349-57 (1987) (statutes); *Davis v. United States*, ___ U.S. ___, 131 S. Ct. 2419, 2428-34 (2011) (caselaw).

Under state law, the Texas exclusionary rule is not invoked because—at the time of the offense—no violation occurred. The State recognizes that article 38.23(b)—Texas' limited good faith exception—requires a warrant. TEX. CODE CRIM. APP. PROC. art. 38.23(b). Notwithstanding, invocation of exclusionary rule principles relies on article 38.23(a). That subsection's plain language requires a violation for exclusion to be triggered. When Appellant's blood was drawn, no one credibly questioned the validity of the officer's statutory authority.[2] Both the trial court and the Fort Worth Court made it clear in their rulings that the officer was following the law as it existed at the time of the blood draw herein. RR. II Supp. II 107-08. *See Lewis*, 2015 WL 1119966 at *2-3. In other words, at the time of the seizure, the officer followed then-existing law. *See* TEX. CODE CRIM. PROC. art. 38.23(a); *see also* TEX. PENAL CODE §1.07(a)(30) (defining "law" as meaning the state and federal constitution and statutes, in addition to the written opinions of a court of record); *see also Davis*, 131 S.Ct. at 2427-28 ("obtained"

---

[2] *See Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002); TEX. TRANSP. CODE §724.012(b); *see also Karev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App 2009) (statutes presumed constitutional until held otherwise).

applies to unlawfulness at the time of the seizure; exclusion not triggered in an absence of police culpability). Simply put, these circumstances should not require exclusion.[3]

The Supreme Court mentioned, in *dictum*, the application of the exclusionary rule versus Fourth Amendment violations in a non-blood-draw scenario decided recently. In *Heien*, the Court weighed the validity of an investigatory stop where the officer misunderstood the traffic code provision he relied on to support the stop. *See Heien v. North Carolina*, 135 S.Ct. 530, 534-36 (2014). The Supreme Court considered the reasonableness of the officer's mistake that lead to the stop and arrest when considering remedies. In so doing, the Court pointed out the myriad decisions finding exclusionary-rule invocation inappropriate where the officer's conduct—valid at the time—was later declared unconstitutional. *Id.* With only one justice dissenting, the Supreme Court's decision pondered the exclusionary rule's limits which had been briefly considered in *Michigan v. DeFillippo*, 443 U.S. 31, 33, 37-38 (1979) (suggesting that exclusion might have been appropriate had the provision been "grossly and

---

[3] *See also United States v. Peltier*, 422 U.S. 531, 541-42 (1975) (upholding suspicionless, warrantless seizure of person by roving border patrol agents based upon constitutional-at-time statute); *Krull*, 480 U.S. at 349–50 (exclusionary rule inapplicable when police rely on statute later found unconstitutional); *Mapp v. Ohio*, 367 U.S. 643, 656 (1961) (exclusionary rule seeks to deter officers from violating law to obtain evidence); *Thornton v. State*, 145 S.W.3d 228, 233-34 (Tex. Crim. App. 2004) (exclusion not justified where marginal or nonexistent deterrent benefits); *accord State v. Reese*, 353 Wis.2d 266, 844 N.W.2d 396, 402 (Wis. App. 2014) (no exclusion in *McNeely* case since no time-of-seizure misconduct).

flagrantly unconstitutional") (citation omitted). Although the *Heien* discussion is merely *dicta*, it reiterates the importance of focusing on the fact that the instant officer's conduct fully complied with mandatory, settled law at the time of Appellant's arrest. *McNeely* and subsequent caselaw questioning implied-consent blood draws came later. Since no violation occurred at the time of the Appellant's 2012 blood draw, article 38.23's exclusionary provision does not apply. Thus, this Court should reverse and remand this case to the Fort Worth Court for application of the correct standards of review.

## THIRD QUESTION FOR REVIEW

*Did the Fort Worth Court correctly apply the proper standard of review in a case where the error is of constitutional dimension? See* TEX. R. APP. P. 44.2(a). *Lewis*, 2015 WL 1119966 at \*3. RR. III 38-97.

It is well settled that there is no set formula for conducting a harm analysis that necessarily applies across the board, to every case and every type of constitutional error. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). However, this Court has prescribed several nonexclusive factors to be considered when conducting a harm analysis under Rule 44.2(a), including: (1) the nature of the error, (2) the extent the error was emphasized by the State, (3) the weight a juror would probably place on the error, and (4) the error's probable

17

collateral consequences. *Snowden*, 353 S.W.3d at 822 n. 31. When conducting a harm analysis in the context of a constitutional violation, appellate courts are to "'judge the magnitude of the error in light of the evidence as a whole to determine the degree of prejudice to the defendant resulting from that error.'" *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003) (*quoting United States v. Polanco*, 93 F.3d 555, 562–63 (9th Cir. 1996)).

If the foregoing test had been applied properly, one would see the error in the Fort Worth Court's holding. First, the State was clear during *voir dire* about all three ways the defendant could have been found guilty: loss of normal use of physical faculties, loss of normal use of mental faculties, and blood alcohol content greater than .08. RR. II 46-53. At trial, there was ample evidence of each. *See generally State's petition at 3-4.* Again, if the State's argument was considered in its entirety, this Court would see that the State referenced each definition of intoxication and how it applied to Lewis in approximately equal proportion. RR. IV 40; 53-54; 57-58. Both prosecutors made frequent reference to the videotape of the stop and arrest and his appearance and behavior on the tape. RR. IV 41-42; 53-54; 58. Defense counsels' argument, on the other hand was limited to suggesting the arresting officer was racist ("rogue racist policeman") and that there was an unspecified impropriety in the taking and testing of the blood. RR. IV 43; 44-46.

18

It is also telling that the jury took less than 30 minutes to return with their guilty verdict. RR. IV 58-59.

In regard to the third factor, appellate courts are to consider whether the other evidence showed culpability overwhelmingly as well as the character of the error and how the evidence gleaned from the search might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 359 (Tex. Crim. App. 2002). There was overwhelming evidence aside from the blood test that Lewis was driving while intoxicated, including bloodshot eyes, slurred speech, heavy smell of alcohol on his person, extreme belligerence, refusal to comply with police requests, use of obscenities, and threats of violence toward police and medical personnel. RR. III 38-92.

Indeed, taken to its logical conclusion, the Fort Worth Court's opinion would eviscerate the constitutional harmless error argument. This DWI is not the factual equivalent of a drug case, wherein without the introduction of the drugs, there is no evidence to convict. *See McQuarters v. State,* 58 S.W.3d 250, 258 (Tex. App. – Fort Worth 2001, pet. ref'd). Instead, there was overwhelming evidence of Lewis's guilt without the blood draw: bloodshot eyes, slurred speech, extreme belligerence, refusal to comply with police requests, use of obscenities and threats of violence toward medical personnel. RR. III 38-92. There was the arresting officer's in car recording which corroborated much of the behavior

19

indicative of the loss of normal use of Lewis's faculties. *See State's Ex.* 3. The State contends that the Fort Worth Court's opinion does not give appropriate weight to this evidence in their harmless error analysis. Instead, the opinion seems to hold that any tainted evidence of a blood draw is so overwhelming that **no** amount of other incriminating evidence can overcome the error. This is simply not the law in Texas. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007).

In summary, the State believes that *Villareal* was wrongly decided for a number of reasons. Instead, the State urges this Court to conclude that the Texas statutes are sufficiently protective of defendants' Fourth Amendment rights to pass constitutional muster. Also, the State contends that a proper harmless error analysis in the case at hand, on these facts, would lead to the conclusion that any error is harmless.

## CONCLUSION AND PRAYER

Review should be granted and the decision of the Court of Appeals should be reversed. The State prays that Appellant's felony DWI conviction should be upheld.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

20

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

/s/ Danielle A. Kennedy
DANIELLE A. KENNEDY
Assistant Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas  76196-0201
(817) 884-1687
FAX (817) 884-1672
State Bar No.  12166650
CCAappellatealerts@tarrantcountytx.gov

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes.  This document also complies with the word-count limitations of Tex. R. App. P. 9.4 (i) because it contains less than 3400 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1), as computed by Microsoft Word 10, the computer software used to prepare the document.

/s/ Danielle A. Kennedy
DANIELLE A. KENNEDY

21

# CERTIFICATE OF SERVICE

A true copy of the State's petition for discretionary review has been e-served to opposing counsel, Hon. Abe Factor, lawfactor@yahoo.com, 5719 Airport Freeway, Fort Worth, Texas 76117, and to Hon. Lisa McMinn, information@spa.texas.gov, State's Prosecuting Attorney's Office, P. O. Box 13046, Austin, Texas 78711, on this, the 13th day of May 2015.

/s/ Danielle A. Kennedy
DANIELLE A. KENNEDY

22

APPENDIX

A


Not Reported in S.W.3d, 2015 WL 1119966 (Tex.App.-Fort Worth)
**(Cite as: 2015 WL 1119966 (Tex.App.-Fort Worth))**

Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

MEMORANDUM OPINIONDO NOT PUBLISH TEX.R.APP. P. 47.2(B)

Court of Appeals of Texas,
Fort Worth.
Robert Othella James **Lewis** a/k/a Robert **Lewis**,
Appellant
v.
The **State** of Texas, **State**

NO. 02–13–00416–CR
DELIVERED: March 12, 2015

FROM THE CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY, TRIAL COURT NO. 1299359D, HON. SHAREN WILSON, TRIAL COURT JUDGE
ABE FACTOR, DANIEL COLLINS FACTOR, CAMPBELL & COLLINS FORT WORTH, TEXAS, ATTORNEY FOR APPELLANT

SHAREN WILSON, CRIMINAL DISTRICT AT-TORNEY; DEBRA WINSOR, CHIEF OF POST CONVICTIONS; DANIELLE A. KENNEDY, SAMUEL WILLIAMS AND GRAHAM NORRIS, ASSISTANT CRIMINAL DISTRICT ATTOR-NEY(S) FOR TARRANT COUNTY FORT WORTH, TEXAS, ATTORNEY FOR STATE

PANEL: MEIER, GABRIEL, and SUDDERTH, JJ.

**MEMORANDUM OPINION** [FN1]

FN1. *See* Tex. R. App. P. 47.4.

LEE GABRIEL JUSTICE
**\*1** Appellant Robert Othella James Lewis appeals from his conviction for driving while intoxic-ated (DWI) and from his five-year sentence. We re-verse the trial court's order denying Lewis's pretrial motion to suppress and judgment and remand the case to the trial court for further proceedings.

**I. BACKGROUND**
Late at night on July 17, 2012, Officer Jose Lopez saw a car speeding, and then it failed to stop at a stop sign. Lopez began following the car and saw the car "fail to maintain a single lane of travel ... straddl[ing] some of the lines." Lopez pulled over the car. Lewis was the driver and sole occu-pant of the car and informed Lopez that he did not have any identification. Lewis was uncooperative and exhibited slurred speech and "watery, red eyes." Lopez smelled a "strong smell of an alcohol-ic beverage" on Lewis's breath. After initially re-fusing to get out of his car, Lewis eventually got out after Lopez pointed his Taser at him. Lewis also refused to perform any field-sobriety tests.

Lopez then arrested Lewis, but Lewis would not put his hands behind his back as requested. Lewis refused five times to put his hands behind his back, and Lopez eventually fired his Taser at Lewis after warning him that he would do so if Lewis would not comply. After being hit by the Taser, Lewis fell and hit his head on the ground. Lopez called for an ambulance, but Lewis refused medical attention at the scene. Lopez handcuffed Lewis. At this point, Lopez found Lewis's identification in his wallet and subsequently discovered that Lewis had two prior DWI convictions. As statutorily author-ized, Lopez then took Lewis to the hospital for a mandatory blood draw without first obtaining a warrant. *See* Tex. Transp. Code Ann. § 724.012(b)(3) (West 2011). At the hospital, Lewis began cursing very loudly, threatened to kick hos-pital staff members in the face if they drew his blood, and had to be held down by two officers and several hospital staff members. The blood test re-vealed that Lewis had a blood-alcohol content of .27, which is more than three times above the legal limit. *See* Tex. Penal Code Ann. § 49.01(2)(B)

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2015 WL 1119966 (Tex.App.-Fort Worth)
**(Cite as: 2015 WL 1119966 (Tex.App.-Fort Worth))**

(West 2011).

A grand jury indicted Lewis for DWI and included a felony-repetition paragraph alleging that Lewis had twice previously been convicted of DWI. *See id.* §§ 49.04(a), 49.09(b) (West Supp. 2014). Before trial, Lewis filed a motion to suppress the blood-alcohol results because there were no exigent circumstances or any other exception to the constitutional warrant requirement; thus, Lewis argued that the blood-alcohol results, which were obtained without a warrant, were inadmissible. *See generally McGee v. State,* 105 S.W.3d 609, 615 (Tex.Crim.App.) (delineating three exceptions to search-warrant requirement), *cert. denied,* 540 U.S. 1004 (2003).

The trial court held an evidentiary hearing on the motion at which Lopez testified that he did not consider obtaining a warrant to draw Lewis's blood, although he knew how to do so, and that he had Lewis's blood drawn under the authority of section 724.012. The trial court concluded that no exigent circumstances justified the warrantless blood draw but that the blood draw nevertheless was authorized by section 724.012; thus, the trial court held the blood-alcohol results admissible even in the absence of a warrant and denied the motion.[FN2] The blood-alcohol results were admitted at trial, and a jury found Lewis guilty of DWI. After a punishment hearing, the jury assessed his punishment at five years' confinement.

> FN2. Although the trial court stated at the hearing that it would be entering findings of fact and conclusions of law, the clerk's record does not include findings or conclusions. In recounting the trial court's rulings, we are relying on the trial court's statements in the reporter's record from the motion-to-suppress hearing.

## II. DISCUSSION
### A. ABUSE OF DISCRETION

**\*2** We review the denial of a motion to suppress evidence for an abuse of discretion. *Shepherd v. State,* 273 S.W.3d 681, 684 (Tex.Crim.App.2008). Therefore, we view the facts in the light most favorable to the trial court's decision, giving almost total deference to the trial court's express or implied determination of historical facts, and review de novo the court's application of the law of search and seizure to those facts. *Id.*

Lopez did nothing wrong at the time he had Lewis's blood drawn without a warrant based on the authority of section 724.012. Similarly, the trial court understandably held that the statute specifically authorized the blood draw and was, in effect, an exception to the warrant requirement. However, the court of criminal appeals recently held that the provisions in the transportation code allowing warrantless blood or breath samples to be taken without consent, including section 724.012, are alone not "a constitutionally valid alternative to the Fourth Amendment warrant requirement." *State v. Villarreal,* No PD–0306–14, 2014 WL 6734178, at \*20 (Tex.Crim.App. Nov. 26, 2014) (5–4 opinion), *reh'g granted,* No. PD–0306–14 (Feb. 25, 2015). Here, the State did not argue any exception to the warrant requirement justified the warrantless search and relied solely on section 724.012. Indeed, the trial court recognized there were no exigent circumstances dispensing with the warrant requirement. *See Missouri v. McNeely,* 133 S.Ct. 1552, 1563, 1568 (2013) (holding natural metabolization of alcohol in the bloodstream does not present a per se exigency justifying exception to warrant requirement for nonconsensual blood testing in DWI cases). Further, Lopez's good-faith belief that the statute authorized the warrantless search does not overcome the exclusionary rule. *See Burks v. State,* No. 02–13–00560–CR, 2015 WL 115964, at \*3 (Tex.App.–Fort Worth Jan. 8, 2015, no pet.). Based on *Villarreal,* the trial court erred in its application of the law to the facts and, thus, by denying Lewis's motion to suppress.

### B. HARM ANALYSIS

We review the harm resulting from a trial court's erroneous denial of a motion to suppress and

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2015 WL 1119966 (Tex.App.-Fort Worth)
**(Cite as: 2015 WL 1119966 (Tex.App.-Fort Worth))**

subsequent admission of evidence obtained in violation of the Fourth Amendment under the constitutional harmless-error standard. Tex. R. App. P. 44.2(a); *see Hernandez v. State,* 60 S.W.3d 106, 108 (Tex.Crim.App.2001) (mandating application of rule 44.2(a) to harm analysis of trial court's erroneous denial of motion to suppress under the Fourth Amendment). This standard requires us to reverse the trial court's judgment of conviction unless we "determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a). Our primary question is whether there is a reasonable possibility that the error might have contributed to the conviction or punishment. *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim. App.1998), *cert. denied,* 526 U.S. 1070 (1999). In other words, we calculate the probable impact the evidence had on the verdict in light of the other evidence. *McCarthy v. State,* 65 S.W.3d 47, 55 (Tex.Crim.App.2001, *cert. denied,* 536 U.S. 972 (2002).

Here, the blood-alcohol results were introduced through the testimony of a forensic toxicologist, Joyce Ho.[FN3] She testified that Lewis's blood-alcohol content was .27. The chief toxicologist, Robert Johnson, testified that .27 was over the legal limit of .08 and that such a blood-alcohol level could result in unconsciousness or abnormal "walking and talking." Johnson also stated that it was possible Lewis's blood-alcohol content was higher than .27 at the time Lopez stopped him based on retrograde extrapolation. During closing jury arguments, the State recognized that Lewis's demeanor and odor of alcohol were "signs that he was intoxicated." But the State continued that the "clearest" sign of intoxication was his blood-alcohol content:

> **\*3** [Lewis's impaired physical and mental condition is] not the clearest reason why we know [Lewis was legally intoxicated]. Because remember there's three ways in which you can find that the defendant was intoxicated that night.... And the third way is that he had ... a blood alcohol

content of over .08 percent. Well, in this case he had a blood-alcohol content of .27 percent....

> ....

> That's three times the legal limit. Three times. We know he was intoxicated.

Although there was other evidence of Lewis's intoxication—bloodshot eyes, an odor of alcohol, slurred speech, and his refusal to perform field-sobriety tests—we cannot conclude beyond a reasonable doubt that the blood-alcohol evidence did not contribute to the jury's verdict. The evidence that Lewis's blood-alcohol content was three times the legal limit had a probable impact on the verdict even in light of the other evidence indicating intoxication, and there is a reasonable possibility that the error might have contributed to Lewis's conviction or punishment. *See, e.g., Cole v. State,* No. 06–13–00179–CR, 2014 WL 7183859, at *10 (Tex.App.–Texarkana Dec. 18, 2014, pet. filed); *cf. Gentry v. State,* No. 12–13–00168–CR, 2014 WL 4215544, at *4 (Tex.App.–Tyler Aug. 27, 2014, pet. filed) (mem. op., not designated for publication) (holding admission of blood-alcohol evidence harmed defendant because court could not conclude erroneous denial of motion to suppress did not influence defendant's decision to plead guilty). Indeed, the State stressed that Lewis's blood-alcohol content was the "clearest" indicator that Lewis was legally intoxicated.[FN4] We sustain Lewis's first issue.

> FN3. The State does not argue that Lewis's failure to object to the admission of the blood-alcohol results on the basis of the Fourth Amendment at trial resulted in a waiver of his motion-to-suppress arguments, and we do not construe it to be so in the context of this case. *See Thomas v. State,* 408 S.W.3d 877, 885–86 (Tex.Crim.App.2013).

> FN4. Because our conclusion regarding Lewis's first issue results in reversal of the

Not Reported in S.W.3d, 2015 WL 1119966 (Tex.App.-Fort Worth)
**(Cite as: 2015 WL 1119966 (Tex.App.-Fort Worth))**

trial court's judgment, we need not address Lewis's second issue raising jury-selection error. *See* Tex. R. App. P. 44.2(a), 47.1.

### III. CONCLUSION

Because we hold that the trial court erred by denying Lewis's motion to suppress and that there is a reasonable possibility that this constitutional error might have contributed to Lewis's conviction or punishment, we reverse the trial court's order denying Lewis's motion to suppress and the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion. *See* Tex. R. App. P. 43.2(d).

Tex.App.-Fort Worth, 2015
Lewis v. State
Not Reported in S.W.3d, 2015 WL 1119966 (Tex.App.-Fort Worth)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.